Calvin G. SWEET, Appellant,

v.

UNITED STATES of America, Appellee.

No. 82–1041.

United States Court of Appeals,
Eighth Circuit.

Submitted June 16, 1982.

Decided Aug. 26, 1982.

Rehearing Denied Sept. 29, 1982.

Gregory A. Eiesland, Gary D. Jensen, Lynn, Jackson, Schultz & Lebrun, P. C., Rapid City, S. D., for appellant.

J. Paul McGrath, Asst. Atty. Gen., Washington, D. C., Terry L. Pechota, U. S. Atty., Rapid City, S. D., Robert S. Greenspan, Carlene V. McIntyre, Attys., Dept. of Justice, Civ. Div., Washington, D. C., for appellee.

Before LAY, Chief Judge, BRIGHT, Circuit Judge, and FAIRCHILD *, Senior Circuit Judge.

BRIGHT, Circuit Judge.

Calvin Sweet appeals from a judgment of the district court in favor of the United States.[1] Sweet, a former serviceman, brought suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 (1976), seeking $3,905,710 in damages for injuries he allegedly sustained as a result of the Army's postdischarge negligence. Specifically, Sweet claims the Army: (1) failed to inform him that he had ingested lysergic acid diethylamide (LSD) as part of an Army experiment; and, (2) failed to provide him with postdischarge medical care. We affirm the judgment of the district court.

I. *Background.*

Calvin Sweet quit high school and joined the Army in 1955 at the age of seventeen. In 1957, Sweet volunteered to participate in a series of chemical warfare experiments conducted at the United States Army Chemical Center at Edgewood Arsenal in Maryland. There, on three separate occasions, Army personnel gave Sweet an unidentified, clear, odorless substance to drink. At trial, Sweet claimed this substance was LSD. The Army's records of the experiments do not indicate whether Sweet drank LSD or a harmless "control" substance used in the experiment. *See Sweet v. United States*, 528 F.Supp. 1068, 1071 n.2 (D.S.D. 1981).

Sweet received an honorable discharge in 1959 and left the Army. In 1961, Sweet reenlisted and was sent to Germany. While stationed in Germany, Sweet created a disturbance in a cafe by suddenly overturning tables and chairs. Several military policemen restored order and took Sweet to an Army hospital. An Army physician diagnosed Sweet's condition as a "[p]assive-aggressive reaction, chronic, moderate, manifested by: episodes of antisocial behavior while under the influence of alcohol, chronic difficulty with authority figures and inability to adjust comfortably to assignments not of his liking." Sweet's commanding officer recommended that Sweet be discharged due to recurring nervous spells. In January 1962, Sweet received a voluntary general discharge.

On August 4, 1976, Sweet applied for veterans disability benefits, stating that among his ailments he suffered from a

---

* THOMAS E. FAIRCHILD, United States Senior Circuit Judge, Seventh Circuit, sitting by designation.

1. The district court opinion of Honorable Donald J. Porter, United States District Judge for the District of South Dakota, is reported at 528 F.Supp. 1068 (D.S.D.1981).

"[n]ervous condition, stomach condition [and a] dental condition * * * [which] are the result of a drug experiment I participated in * * * during my first enlistment * * *." After initially ruling against Sweet, the Veterans Administration awarded Sweet a fifty percent disability compensation.

In 1978, in conformity with provisions of the Federal Tort Claims Act, 28 U.S.C. § 2675(a) (1976),[2] Sweet filed an administrative claim for $2 million in damages against the Department of the Army. Sweet stated that he suffered a "post-traumatic stress disorder" after the Army administered LSD to him in 1957. He claimed that the Army's postdischarge negligence in failing to notify him that he had been given LSD and in failing to provide him with postdischarge medical care aggravated his condition, causing it to become permanent and irreversible. The Army denied the claim and Sweet brought this suit in district court.

After a five-day bench trial, the district court entered judgment in favor of the United States. The district court held that (1) the Federal Tort Claims Act two-year statute of limitations, 28 U.S.C. § 2401(b) (1976), barred Sweet's action; (2) the doctrine of intramilitary immunity precluded recovery; and (3) Sweet failed to prove that the Government's failure to provide followup medical care after his discharge either caused his present mental condition or aggravated an earlier mental condition. *Sweet v. United States, supra,* 528 F.Supp. at 1070.

## II. *Discussion.*

On appeal, Sweet argues that the district court (1) incorrectly ruled that the applicable statute of limitations barred his claim; (2) erroneously concluded that Sweet did not have a cause of action under the Federal Tort Claims Act; and (3) erroneously found that Sweet failed to prove that the failure of the United States to provide followup care caused his mental condition or aggravated an earlier mental condition. Sweet's legal arguments in support of contentions (1) and (2) present difficult questions. We do not reach them, however, because the district court's finding that Sweet did not establish a causal connection between the Government's allegedly wrongful conduct and Sweet's present mental condition is not clearly erroneous.

Sweet disputes the district court's determination on causation, arguing that the relevant underlying facts require an ultimate finding in his favor. He contends that the 1977 Veterans Administration fifty-percent disability award constituted an admission by the Government that the Army's 1957 experiment caused Sweet's disability.[3] Sweet argues that the district court should have given this determination substantial weight. We disagree.

Consistent with a policy of giving a generous interpretation of entitlement for veterans benefits, Veterans Administration proceedings resolve all reasonable doubt in favor of the applicants.[4] In the present

**2.** The Federal Tort Claims Act, 28 U.S.C. § 2675(a) (1976), provides:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

**3.** The Veterans Administration rating decision that granted Sweet disability benefits stated in part:

All the reasonable doubt is resolved in favor of service connection for the veteran's mental condition. Evidence of record does show that the veteran participated in a drug testing program in September 1957 and it is quite apparent that his present difficulty is associated as a result of this drug testing program.

**4.** The Veterans Administration regulation states:

§ 3.102 *Reasonable doubt.*
It is the defined and consistently applied policy of the Veterans Administration to administer the law under a broad interpretation

case, Sweet must prove causation by a preponderance of the evidence. When Sweet applied for Veterans Administration benefits he bore a lesser burden of proving causation than he faces in his present suit. Thus, the district court properly refused to consider the Veterans Administration decision an admission by the Government.

Sweet also contends that the district court erred in according weight to the testimony of the Government's expert witnesses. Sweet argues that the Government's experts, Dr. Sidney Cohen and Dr. David Bean, were not qualified to offer opinions on the issue of causation. We do not agree, and, accordingly, hold that the trial court did not abuse its discretion, either in admitting the testimony of Drs. Cohen and Bean, or in according it weight.

 An individual may testify as an expert if his knowledge of the subject matter qualifies him to offer an opinion that will most likely assist the trier of fact in arriving at the truth. *Holmgren v. Massey-Ferguson, Inc.*, 516 F.2d 856, 858 (8th Cir. 1975). The determination of who may testify as an expert falls within the discretion of the trial court, and this court will not overturn it in the absence of an abuse of discretion or clear error of law. *Gisriel v. Uniroyal, Inc.*, 517 F.2d 699, 702 (8th Cir. 1975). After reviewing the qualifications and backgrounds of the Government's experts, Drs. Cohen and Bean, we conclude that the trial court did not err in allowing them to testify as experts.

 Dr. Cohen, a professor of psychiatry at the University of California at Los Angeles, has published two books and many articles on the subject of LSD. Dr. Cohen is widely recognized as one of the foremost experts in the field of LSD research.[5] Sweet argues that Dr. Cohen's credentials are "impressive but irrelevant," because he is not a practicing psychiatrist and did not examine Sweet before the trial. Dr. Cohen described himself as a clinical psychopharmacologist, meaning a person who studies the impact of drugs upon the mind. He testified within the area of his expertise, describing the possible effects of LSD on Calvin Sweet's mental condition. We therefore find no error by the trial court in permitting Dr. Cohen to testify as an expert.

 The Government's second expert witness, Dr. Bean, is chairman of the Department of Psychiatry at the University of South Dakota School of Medicine, and administrator of the state psychiatric hospital at the South Dakota Human Services Center. Dr. Bean, a board-certified psychiatrist, examined Sweet prior to trial.

Sweet argues that the trial court erred in allowing Dr. Bean to testify as an expert, because Dr. Bean does not practice psychiatry. Sweet also complains that Dr. Bean spent far less time in examining him than did his own expert witnesses. We do not find Sweet's arguments persuasive. Dr.

---

consistent, however, with the facts shown in every case. When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. By reasonable doubt is meant one which exists by reason of the fact that the evidence does not satisfactorily prove or disprove the claim, yet a substantial doubt and one within the range of probability as distinguished from pure speculation or remote possibility. It is not a means of reconciling actual conflict or a contradiction in the evidence; the claimant is required to submit evidence sufficient to justify a belief in a fair and impartial mind that his claim is well grounded. Mere suspicion or doubt as to the truth of any statements submitted, as distin-

guished from impeachment or contradiction by evidence or known facts, is not a justifiable basis for denying the application of the reasonable doubt doctrine if the entire, complete record otherwise warrants invoking this doctrine. The reasonable doubt doctrine is also applicable even in the absence of official records, particularly if the basic incident allegedly arose under combat, or similarly strenuous conditions, and is consistent with the probable results of such known hardships. [38 C.F.R. § 3.102 (1977).]

5. Sweet's own expert witnesses, Dr. Ralph Fisch and Dr. Lawrence Stross, agreed that Dr. Cohen was a preeminent figure in his field. *Sweet v. United States, supra*, 528 F.Supp. at 1077 n.24.

Bean's testimony established his extensive experience and knowledge of psychiatry. Moreover, the relative length of Dr. Bean's pretrial examination did not reflect adversely on his qualifications. We therefore conclude that the trial court did not abuse its discretion in allowing Dr. Bean to testify as an expert witness.

■ After hearing all the evidence, the trial court concluded that Sweet had failed to prove by a preponderance of the evidence either that the Government caused his present mental condition or aggravated an earlier mental condition. Sweet contends the trial court erred in reaching this conclusion. We disagree.

Dr. Cohen testified that LSD could not possibly have caused Sweet's problems. He stated that LSD does not sensitize or predispose a person to posttraumatic stress disorder and that he had never encountered a case of posttraumatic stress disorder as an aftereffect of LSD. Dr. Cohen also testified that Sweet's episodes of "flashbacks" did not resemble LSD flashbacks.

Dr. Bean's testimony reinforced Dr. Cohen's conclusions. After examining Sweet, Dr. Bean stated that neither the alleged drug experience at Edgewood Arsenal nor the events surrounding the incident in Germany[6] could have caused Sweet's injury. After reviewing this evidence, we cannot say that the district court's conclusion that Sweet had failed to prove causation was clearly erroneous.

Accordingly, we affirm the district court's judgment for the United States because of Sweet's failure in proving causation. We therefore find it unnecessary to review the other grounds cited for the district court's action.

---

**6.** Sweet testified that the military police beat him before taking him to the Army hospital. The trial court found no evidence to substantiate this charge.