**FEDERAL CROP INSURANCE CORPORATION, Appellee,**

v.

**Harold J. HESTER, Appellant.**

**No. 84–1102.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 16, 1985.

Decided June 20, 1985.

David T. Greis, Kansas City, Mo., for appellant.

Cynthia Clark Campbell, Kansas City, Mo., for appellee.

Before LAY, Chief Judge, and BRIGHT and JOHN R. GIBSON, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Harold J. Hester appeals from a judgment of the district court[1] in favor of the Federal Crop Insurance Corporation (FCIC), on its complaint brought under the False Claims Act, 31 U.S.C. §§ 231–235 (1976) (now codified as 31 U.S.C. §§ 3729–3731 (1982)). The complaint alleged that Hester had understated his crop yield for 1976 and thus received crop insurance indemnity payments from the FCIC to which he was not entitled. With respect to three of the four coverage units on which Hester made claims, the jury found for FCIC. Hester claims error in the failure to grant a new trial based on the misconduct of a juror in concealing his farm background on voir dire, failure to require a burden of proof of clear and convincing evidence, admission of expert testimony as to crop yields, and an assortment of other arguments. We affirm the judgment of the district court.

Harold J. Hester, a longtime Nodaway County, Missouri farmer, insured his 1976 corn crop through the FCIC. His land was divided into four units for coverage. In October 1976, Hester advised the FCIC that he wanted to file a claim for low yields caused by drought. Two FCIC adjusters went to Hester's farm, inspected the units,

---

1. The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

measured the storage bins, and later fed information into a computer to determine Hester's total production for each unit. The adjusters filled out claim forms, which Hester then signed. On Unit One, totaling 217.5 acres, with a guaranteed yield of 69 bushels per acre, Hester reported a yield of 26.2 bushels per acre. On the 144-acre Unit Two, with a guarantee of 55 bushels per acre, Hester reported a yield of 19 bushels per acre. For Unit Three, 62.1 acres with a guarantee of 55 bushels per acre, Hester's reported yield was 30 bushels per acre. And, on the 70.6-acre Unit Four, which is not a subject of this appeal, Hester reported a yield of 10 bushels per acre on a guarantee of 31 bushels per acre. In November 1976 and January 1977, the FCIC issued Hester notices of indemnity and checks totaling $25,639.90, covering the four units.

. On November 30, 1976, Hester filed a claim for disaster credit with the Agricultural Stabilization and Conservation Service (ASCS) for the crop covered by his claim with the FCIC. In February 1977, members of the Nodaway County ASCS Committee inspected Hester's land to evaluate his claim. They determined that Hester's corn production for Units One, Two and Three in 1976 had been higher than the insurance guarantees on the units, and denied his ASCS claim.

Because of suspicion that had developed, the FCIC conducted a further investigation, including a growing season and preharvest appraisal for Hester's 1977 crop, which Hester had also insured with the FCIC. Based on the investigation, the FCIC retroactively cancelled Hester's insurance for 1976 and 1977 and demanded. reimbursement for the indemnity payments.

In September 1978, the FCIC filed suit against Hester under the False Claims Act. At trial, farmers with fields adjoining Hester's, as well as members of the ASCS Committee, testified as to their observations of Hester's fields and estimated his yield for the period in question. The jury returned a verdict in favor of the FCIC on Units One, Two, and Three, and in favor of Hester on Unit Four. Pursuant to the Act, the district court doubled the jury's finding of actual damages and ordered a $2,000 forfeiture for each of the three units for which Hester understated the yield, resulting in a judgment of $50,420.00 for the FCIC.[2] Hester moved alternatively for a directed verdict, judgment notwithstanding the verdict, remittitur of the judgment, or a new trial, all of which the district court denied.

## I.

During voir dire, the district court asked the panel five questions about farming.[3] One of the veniremembers who sat on the jury, Calvin Shreve, did not respond to any of these questions. After the conclusion of the trial, a paralegal assistant of defense counsel interviewed many jurors on the telephone. In talking to Mr. Shreve, she learned that he had in fact been raised on and had worked on a farm, that he presently owned a farm, and that he did not think defense counsel was aware of his farming background.

Hester filed a motion asking the court to reconsider its prior order denying a new trial. He claimed that Shreve's failure to answer the farming questions was an intentional failure to disclose material information, which denied Hester his right to trial by an impartial jury. The court held an evidentiary hearing on the issue. Shreve testified that his failure to answer the questions was not motivated by an intention to conceal anything, but rather was inadvertent. He claimed that he did not recall hearing the questions or the other jurors' responses, and that he was either

---

**2.** The district court also entered a separate judgment for the FCIC in the amount of $6,702.82 on its claim for recovery of the indemnity paid to Hester for his 1977 corn crop, for which the FCIC retroactively cancelled Hester's coverage. Hester does not appeal this judgment.

**3.** The court asked whether any of the veniremembers had owned or resided on a farm; had experience in plowing, planting, and harvesting corn; had dealt with the FCIC or the ASCS; had participated in the grain reserve program; or had experience with agricultural loans.

not alert at the time of the questions or he was talking to someone else.

The court denied Hester's motion for a new trial. The court found that although it was doubtful Shreve had been talking during voir dire, his failure to respond to the questions was most likely inadvertent. It was unlikely that Shreve's silence was intentional, the court noted, in light of his statements at the hearing that sitting on the jury would lose him money. The court also pointed out that any hostility that Shreve displayed towards Hester or Hester's case occurred only after the trial was completed. Thus the court concluded that juror Shreve was impartial during voir dire and had not intentionally concealed any information. Further, the court found no indication that Shreve's failure to respond prejudiced Hester, or that Shreve would have been struck from the jury had he answered the questions. The jury chosen from the panel included three members with some kind of farming background. Neither party indicated by its use of peremptory challenges that it was trying either to select or reject a farm-oriented jury. Finally, the court noted that the farming questions were contained in plaintiff's proposed voir dire questions and not in Hester's. Hester contends on appeal that Shreve's failure to respond to the farming questions prejudicially impaired his right to exercise his peremptory challenges. Thus he claims that the district court's judgment should be reversed, and the case remanded for a new trial.

The decision whether to grant a motion for a new trial is committed to the discretion of the district court. *McDonough Power Equipment v. Greenwood,* 464 U.S. 548, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984); *Aimor Electric Works v. Omaha National Bank,* 727 F.2d 688, 692 (8th Cir.1984). An appellate court will not reverse a trial court's determination of a motion for a new trial without a clear showing of abuse of that discretion. *Burnett v. Lloyds of London,* 710 F.2d 488, 490 (8th Cir.1983).

■ Upon reviewing the record we find no abuse of the district court's discretion in denying the new trial motion. The district court's finding that juror Shreve's inattentiveness was inadvertent is not contradicted in the record. The Supreme Court recently held in *McDonough Power Equipment,* 104 S.Ct. at 850, that to obtain a new trial in this situation,

> a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

Assuming that Hester has met the first requirement of *McDonough,* he has not shown that a correct response by Shreve to the farming questions could have supported a challenge for cause. Indeed, three of the other five individuals ultimately chosen for the jury answered affirmatively to at least one of the farming questions. Moreover, the mere acknowledgment of a farming background by a potential juror would not indicate bias towards either party in this case. Thus, the district court did not err in denying Hester's motion for a new trial.[4]

## II.

Hester also argues that the district court applied the wrong burden of proof. The

---

4. Hester urges that we apply the standard articulated in *McCoy v. Goldston,* 652 F.2d 654 (6th Cir.1981), requiring a new trial where the "undisclosed information would have resulted in the juror's disqualification for cause" or "when a juror deliberately concealed information or gave a purposefully incorrect answer." *Id.* at 659. We need not determine whether this statement of the law survived *McDonough. See* 104

S.Ct. at 851 (Brennan, J., dissenting). The district court's findings, which we do not find clearly erroneous, show that Hester has satisfied neither of the *Goldston* tests. The same reasoning defeats Hester's reliance on *Consolidated Gas & Equip. Co. v. Carver,* 257 F.2d 111, 115–16 (10th Cir.1958) ("If the juror had disclosed [the omitted response], the court would have excused him for cause.").

court instructed the jury, as requested by both parties, that the FCIC need prove its case against Hester by only a "preponderance of the evidence." Hester now claims that the correct burden of proof in actions brought under the False Claims Act is by "clear, unequivocal, and convincing evidence." Conceding that he did not object to the preponderance of the evidence instruction at trial, Hester urges this court to reverse under the "plain error" doctrine.

We are reluctant to review this issue even on plain error grounds. Hester not only failed to object to the court's burden of proof instruction, see Fed.R.Civ.P. 51, but submitted the preponderance of the evidence standard in three of his requested instructions. Thus, we need not search for plain error, for it is "fundamental that where the defendant 'opened the door' and 'invited error' there can be no reversible error." United States v. Steele, 610 F.2d 504, 505 (8th Cir.1979); see Mid-America Food Service v. ARA Services, 578 F.2d 691, 696 (8th Cir.1978).

■■■ Moreover, any defect in the instruction did not rise to the level of plain error. This court will not reverse on the basis of an error in the instructions that was not properly objected to at trial unless a miscarriage of justice would otherwise occur. See, e.g., Morris v. Getscher, 708 F.2d 1306, 1309 (8th Cir.1983). Plain error exists only where a mistake " 'has seriously affected the fairness, integrity or public reputation of judicial proceedings.' " Id. (quoting Rowe International v. J–B Enterprises, 647 F.2d 830, 835 (8th Cir.1981)).

■■■ This court has not yet addressed the issue of which burden of proof applies in cases under the False Claims Act. Nor does any consensus exist among the circuit courts that have considered the issue. The Fifth Circuit has applied the preponderance of the evidence standard in cases under the

Act. See United States v. Thomas, 709 F.2d 968, 971–72 (5th Cir.1983). The Court of Claims and the Ninth, Sixth and Second Circuits, however, have chosen some version of the clear and convincing burden of proof. See, e.g., Hageny v. United States, 570 F.2d 924, 933 (Ct.Cl.1978); United States v. Milton, 602 F.2d 231, 233 (9th Cir.1979); United States v. Mead, 426 F.2d 118, 123 (9th Cir.1970); United States v. Ekelman & Associates, Inc., 532 F.2d 545, 548 (6th Cir.1976); United States v. Ueber, 299 F.2d 310, 314–15 (6th Cir.1962); United States v. Foster Wheeler Corporation, 447 F.2d 100, 101 (2d Cir.1971).[5] Because of the lack of controlling precedent within the Eighth Circuit and the split of authority among other courts, we decline to hold that the district court committed plain error in instructing the jury as to the preponderance of evidence standard. The court chose one of the two prevailing standards used in False Claims Act cases, and both the FCIC and Hester consented in that choice. The plain error doctrine is to be invoked only in rare cases, and its application requires a much greater showing of injustice than is present here.

■■■ Further, although we need not reach this point in view of our holding that the district court's instruction was not plain error, we think the preponderance of the evidence standard is appropriate under the Act. Courts that have chosen the clear and convincing standard have done so for one primary reason: that the "gravamen" of a False Claims Act suit is "intentional fraud and misrepresentation." Ueber, 299 F.2d at 314; see Ekelman, 532 F.2d at 58; see also Hageny, 570 F.2d at 933 ("The degree of proof necessary to establish fraud demands more than a preponderance of evidence"); Robbins, 207 F.Supp. at 807–08 ("The Government's proof should be by clear, explicit and unequivocal evidence, since fraud is never presumed."). This

5. A similar lack of agreement exists at the district court level. The preponderance of the evidence standard was adopted in United States v. Cato Bros., 175 F.Supp. 811, 814 (E.D.Va.), rev'd on other grounds, 273 F.2d 153 (4th Cir.1959), cert. denied, 362 U.S. 927, 80 S.Ct. 753, 4 L.Ed.2d

746 (1960). Other district courts adhere to the clear and convincing requirement. See, e.g., United States v. Lawson, 522 F.Supp. 746, 750 (D.N.J.1981); United States v. Robbins, 207 F.Supp. 799, 807–08 (D.Kan.1962).

court has held, however, that the Act covers not only fraudulent claims based on intentional misrepresentations, but false claims based on negligent misrepresentations as well. *United States v. Cooperative Grain & Supply Co.*, 476 F.2d 47, 60 (8th Cir.1973). Because fraud need not be an element of an action under the Act, the rationale of these courts, that fraud requires a higher standard of proof, is eroded.

Nor are we persuaded by Hester's argument that a clear and convincing standard is required because the double damages and forfeiture provisions are punitive. The Supreme Court stated in *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 549–51, 63 S.Ct. 379, 386–88, 87 L.Ed. 443 (1943), that an action under the Act retains its civil nature despite these provisions. Because the Act neither requires a showing of fraudulent intent nor is punitive in nature, we find no justification for applying a burden of proof higher than a preponderance of evidence.

### III.

Hester also contends that the district court erred in allowing Hester's neighboring farmers and members of the ASCS Committee to testify as experts. He claims that there was no showing that these farmers possessed the requisite skill or expertise to be qualified as experts. Further, Hester argues that the farmers' estimates as to Hester's probable yield, based on their own yields for the period and their postharvest observations of Hester's fields, were too speculative to be of probative value. We disagree with Hester's contentions and hold that the district court properly admitted the testimony.

A witness may testify as an expert "if his knowledge of the subject matter qualifies him to offer an opinion that will most likely assist the trier of fact in arriving at the truth." *Sweet v. United States*, 687 F.2d 246, 249 (8th Cir.1982); *see also United States v. Rose*, 731 F.2d 1337, 1345 (8th Cir.1984); *Holmgren v. Massey-Ferguson, Inc.*, 516 F.2d 856, 857–58 (8th

Cir.1975). The determination of whether an individual qualifies as an expert will not be reversed unless there is a clear abuse of discretion or a clear error of law. *See Sweet*, 687 F.2d at 249; *Gisriel v. Uniroyal, Inc.*, 517 F.2d 699, 702 (8th Cir.1975); *Holmgren*, 516 F.2d at 858.

The district court here did not err in admitting the farmers' testimony. They had for years grown corn, as Hester had, on similar land. A witness's practical experience can be the basis of qualification as an expert. *Moran v. Ford Motor Co.*, 476 F.2d 289, 291 (8th Cir.1973); Fed.R. Evid. 702. From their experience, these farmers had specialized knowledge pertaining to some of the issues at trial that qualified them to assist the jury. Hester's complaint that no showing was made that the witnesses were "good" farmers misses the point. The relative skill or knowledge of an expert goes to the weight of that witness's testimony, not its admissibility. *See United States v. Gilliss*, 645 F.2d 1269, 1278–79 (8th Cir.1981); *Nielson v. Armstrong Rubber Co.*, 570 F.2d 272, 277 (8th Cir.1978); *Holmgren*, 516 F.2d at 858; *see also Rose*, 731 F.2d at 1346.

Further, we hold that the district court properly admitted the farmers' estimates as to Hester's probable yield. Although state law is not controlling here, we note that Missouri courts have held that the yield of neighboring farms can be used as evidence to determine the probable yield of a farm at issue. *See, e.g., Blackburn v. Carlson Seed Co.*, 321 S.W.2d 520, 523 (Mo.Ct.App.1959); *Moore v. St. Louis Southwestern Railway*, 301 S.W.2d 395, 404 (Mo.Ct.App.1957). It was for defense counsel to bring out on cross-examination those factors that could account for differing yields on adjacent farms. Such factors would affect the weight given the farmers' testimony, and not the admissibility. *See Taenzler v. Burlington Northern*, 608 F.2d 796, 798 n. 3 (8th Cir.1979); *Singer Co. v. E.I. du Pont de Nemours & Co.*, 579 F.2d 433, 442–43 (8th Cir.1978); *Polk v. Ford Motor Co.*, 529 F.2d 259, 271 (8th Cir.), *cert. denied*, 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832 (1976).

## IV.

Hester also contends that the Government failed to prove the accuracy of the computations that determined his 1976 crop yield; that the verdict was not supported by sufficient evidence; that the verdict on damages was without substantial evidence to sustain it; that the district court erred in denying him a directed verdict, judgment notwithstanding the verdict, or a new trial; that the district court erred in admitting evidence of the ASCS's denial of his claim for disaster relief; and that the district court should have granted a mistrial after a witness commented on a subject, Hester's phone calls to the ASCS office inquiring about eligibility requirements, previously prohibited by the district court. We have reviewed the record carefully and find these arguments to be without merit.

At argument and in a letter requested by the court the parties have agreed that the recovery of FCIC should be limited to the indemnity payments. This results in Unit Two damages of $4,942 and Unit Three damages of $2,515.85. These damages, together with those of Unit One, must then be doubled. We remand to the district court to remit damages to $43,099.70 as to Count One. Subject to the remittitur, the judgment is affirmed.