# United States Court of Appeals for the Federal Circuit

2007-1104

MONSANTO COMPANY,

Plaintiff-Appellee,

and

MONSANTO TECHNOLOGY LLC,

Plaintiff-Appellee,

v.

LOREN DAVID,

Defendant-Appellant.

Sambhav N. Sankar, Wilmer Cutler Pickering Hale and Dorr LLP, of Washington, DC, argued for plaintiffs-appellees. With him on the brief were Seth P. Waxman, and Paul R.Q. Wolfson.

Bruce E. Johnson, Cutler Law Firm, P.C., of West Des Moines, Iowa, argued for defendant-appellant.

Appealed from: United States District Court for the Eastern District of Missouri

Judge Henry E. Autrey

# United States Court of Appeals for the Federal Circuit

2007-1104

MONSANTO COMPANY

Plaintiff-Appellee,

and

MONSANTO TECHNOLOGY LLC,

Plaintiff-Appellee,

v.

LOREN DAVID,

Defendant-Appellant.

Appeal from the United States District Court for the Eastern District of Missouri in case no. 4:04-CV-425, Judge Henry E. Autrey.

_____

DECIDED:  February 5, 2008

_____

Before LOURIE, BRYSON, and MOORE, <u>Circuit Judges</u>.

LOURIE, <u>Circuit Judge</u>.

Loren David appeals from the final judgment of the United States District Court for the Eastern District of Missouri.  On April 20, 2006, the court held that David knowingly infringed U.S. Patent 5,352,605 (the "'605 patent"), and awarded Monsanto Company and Monsanto Technology LLC (collectively "Monsanto") compensatory damages in the amount of $226,214.00.  <u>Monsanto Co. v. David</u>, 448 F. Supp. 2d 1088,

1094 (E.D. Mo. 2006).   On July 25, 2006, the court awarded Monsanto attorney fees, prejudgment interest, and costs, bringing the total damages award to $786,989.43. Monsanto Co. v. David, 448 F. Supp. 2d 1095, 1102-03 (E.D. Mo. 2006).   Because we hold that the district court correctly held that the '605 patent was infringed, but find that portions of the damages award were clearly erroneous, we affirm in part, vacate in part, and remand.

## BACKGROUND

One of the many products that Monsanto sells is Roundup® brand herbicide. Glyphosate-based herbicides, such as Roundup®, kill vegetation by inhibiting the metabolic activity of a particular enzyme, common in plants, that is necessary for the conversion of sugars into amino acids.   Herbicides that have glyphosate as the active ingredient are non-selective; that is, they kill all types of plants whether the plant is a weed or a crop.

In addition to developing and selling herbicides, Monsanto sells other products made using biotechnology.   Monsanto has developed Roundup Ready® Technology, which involves inserting a chimeric gene into a seed that allows the plant to advantageously continue to break down sugars in the presence of glyphosate.   Crops grown from such seeds are resistant to Roundup® and other glyphosate-based herbicides.   When Roundup Ready® seeds are planted and used in conjunction with a glyphosate-based herbicide, Roundup Ready® plants will survive, while weeds and other plants lacking the Roundup Ready® gene will be killed.   Monsanto has claimed this technology in the '605 patent.

Roundup Ready® genes have been introduced into numerous agricultural

products, including soybeans, the subject of the present case. Monsanto licenses seed companies to incorporate the Roundup Ready® genes into their plants and to sell soybean seeds containing the Roundup Ready® gene. All purchasers of such seeds are required to enter into a Technology Agreement that grants them the right to use the seeds. The Technology Agreement stipulates that buyers may use the seeds for the planting of only a single commercial crop, but that no seeds from that crop may be saved for future harvests. The Technology Agreement assures Monsanto that farmers must purchase new Roundup Ready® seeds each harvesting season, rather than simply saving seeds from the prior year's harvest, as they normally would with conventional soybean seeds. Monsanto also charges a Technology Fee for each unit of Roundup Ready® soybean seeds sold.[1] The Technology Agreement also contains a clause granting Monsanto the full amount of its legal fees and other costs that may have to be expended in enforcing the agreement.

David is a commercial farmer who owns soybean fields in North and South Dakota. On May 3, 1999, David executed a Monsanto Technology Agreement. In 2003, David planted the contested soybeans at issue in this case.[2] Monsanto claims that the seeds that David planted were Roundup Ready® soybeans improperly saved from the previous year's harvest, but David claims he did not save any Roundup Ready® seed. It is undisputed that, prior to planting his soybean fields in 2003, David

---

[1] The Technology Fee for soybean seeds in 2003 was $7.75 per unit.

[2] The 1999 Monsanto Technology Agreement states "this agreement remains in effect until you or Monsanto choose to terminate the Agreement." Neither party in this appeal contends that the 1999 Agreement was not in effect when David planted his fields in 2003.

purchased 645 units[3] of Roundup Ready® soybean seeds and it is also undisputed that that amount of seeds alone would have been insufficient to completely plant David's soybean fields in 2003. Also undisputed is the fact that David purchased over 1,000 gallons of glyphosate-based herbicides in 2003, herbicide that would destroy any plants that did not contain the Roundup Ready® gene, and would therefore have destroyed any conventional soybean seeds David planted.

At some time in 2003, Monsanto began to suspect that David had saved soybean seed from his previous year's harvest in violation of the Technology Agreement. In April 2004, after David's 2003 crop had already been harvested and sold, Monsanto obtained samples of the soybean plant material remaining from some of David's fields. On the basis of those tests, on April 12, 2004, Monsanto filed suit for patent infringement, breach of contract, unjust enrichment, and conversion, alleging that David had illicitly saved and planted Roundup Ready® seeds.

A bench trial was held in February 2006 during which Monsanto presented crop insurance records with planting dates provided by David. In those records, David claimed to have planted nearly all of his soybean fields as of May 6, 2003. Monsanto also presented an invoice from Red River Grain for David's purchase of 993 units of Roundup Ready® soybean seed on May 31, 2003, nearly a month after David claimed to have planted the vast majority of his soybean crop for the year. Monsanto argued that that purchase was merely David's attempt to convince Monsanto that he had purchased enough Roundup Ready® seed to plant his crops and that he had not saved any seed.

---

[3]    Roundup Ready® soybeans are typically sold in fifty-pound units, while conventional seeds typically are sold in sixty-pound bushels.

On April 20, 2006, the district court entered judgment against David. The court found David's claim that he purchased and planted the seeds from Red River Grain more than a month before the date of the invoice to be "unreliable." David, 448 F. Supp. 2d at 1091. Furthermore, the court found David's testimony regarding his claimed purchase of conventional herbicides "not believable." Id. The court found David to be unreliable as a witness, and also found that he had failed to overcome the scientific evidence showing that he had planted his soybean fields exclusively with Roundup Ready® seeds, yet he had not purchased sufficient quantities of such seed in 2003 to do so. The court, therefore, held that David had willfully infringed the '605 patent and breached the Technology Agreement by planting saved seed from a prior year's crop. A damages award of $226,214.40 was entered in favor of Monsanto.

After the ruling, Monsanto filed four motions: for attorney fees, prejudgment interest, costs, and treble damages. On July 25, 2006, the court awarded Monsanto an additional $10,000 in enhanced damages in lieu of treble damages, and found that Monsanto was entitled to recover attorney fees in the amount of $323,140.05. The court awarded Monsanto costs in the amount of $164,608.03 pursuant to the Technology Agreement, and, alternatively, costs in the amount of $30,542.99 pursuant to 28 U.S.C. § 1920. Lastly, the court awarded Monsanto prejudgment interest in the amount of $63,026.95. In sum, David was found liable to Monsanto for $786,989.43. David filed two motions to amend the April 20, 2006 judgment, both of which were denied by the court on October 27, 2006.

David timely appealed the district court's judgment. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

A.    Infringement

The '605 patent claims a gene sequence, not a plant variety or a seed.  U.S Patent No. 5,352,605 (filed Oct. 28, 1993).  Therefore, David argues that the '605 patent cannot be infringed merely by saving seeds from plants containing the patented gene sequence.  David argues that the written description of the '605 patent lacks the specificity that would be required of a patented plant variety under the utility patent statute; thus, the '605 patent is limited to the gene sequence and does not cover the plant containing such a gene.  David argues that J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred International, Inc., 534 U.S. 124 (2001), stands for the proposition that plants can only receive patent protection under the Plant Patent Act of 1930, 35 U.S.C. §§ 161-164 (the "P.P.A."), the Plant Variety Protection Act of 1970, 7 U.S.C. § 2321 (the "P.V.P.A."), or under a utility patent on a plant variety.  A utility patent on a gene sequence, David claims, does not entitle the holder of that patent to enforce its grant of exclusivity against growers of plant varieties that contain the gene sequence.

Monsanto responds by arguing that the holding of J.E.M. is the opposite of what David claims it to be; the broad language of 35 U.S.C. § 101 relating to patentable subject matter remains unmodified by the existence of the P.V.P.A. and the P.P.A. Moreover, Monsanto points to various decisions of this court that have read the '605 patent onto plants and seeds containing the patented gene and holding those who save such seeds liable for infringement.

David's brief makes much of the Supreme Court's decision in J.E.M.  J.E.M. involved utility patents issued for corn seed products that were held by Pioneer Hi-Bred

International, Inc. The petitioner in J.E.M. argued that Pioneer's patents were invalid because plant varieties were only patentable under the P.P.A. or the P.V.P.A. The Supreme Court disagreed, holding that the existence of statutes specifically authorizing the patenting of plants (the P.P.A. and the P.V.P.A.) did not eliminate the availability of utility patent protection covering plants. We disagree also. Contrary to David's arguments on appeal, nothing in J.E.M. invalidates or limits the '605 patent or any utility patent on a gene sequence in a seed or a plant. In fact, in J.E.M., the Supreme Court explicitly refused to limit the extent of patentable subject matter: "we decline to narrow the reach of § 101 where Congress has given us no indication that it intends this result." J.E.M., 534 U.S. at 146-47. The '605 patent covering the gene sequence is infringed by planting a seed containing the gene sequence because the seed contains the gene. The gene itself is being used in the planting, an infringing act.

David's real complaint seems to be that he should be able to save seed from his harvest, regardless of Monsanto's patent. We have dealt with this complaint before. See e.g. Monsanto Co. v. McFarling, 302 F.3d 1291 (Fed. Cir. 2002). In McFarling, we held that a farmer who saved seed containing a patented gene was liable for patent infringement. Id. at 1299 (citing J.E.M., 534 U.S. at 604). McFarling further established that "the right to save seed of plants registered under the PVPA does not impart the right to save seed of plants patented under the Patent Act." Id. We note that McFarling dealt with the very patent at issue in this case—the '605 patent. We may not disregard a prior decision of this court regarding the same matter.

David next argues that the district court's finding of infringement was clearly erroneous and that there was no evidence from which to infer that he saved Roundup

Ready® soybeans from his 2002 harvest for planting in 2003. Additionally, he argues that the district court's admission of expert testimony and exhibits was an abuse of discretion.

Monsanto urges this court to uphold the factual findings of the district court. Monsanto also argues that David ignores Federal Rule of Evidence 703, which allows an expert witness to base his opinion on evidence that itself may be inadmissible.

We review factual findings of the district court for clear error. Interspiro USA, Inc. v. Figgie Int'l, Inc., 18 F.3d 927, 930 (Fed. Cir. 1994). Decisions concerning the admission of evidence, such as expert testimony, are reviewed for abuse of discretion. U.S. v. Jimenez, 487 F.3d 1140, 1145 (8th Cir. 2007); Pietzmeier v. Hennessy Indus., Inc., 97 F.3d 293, 296 (Fed. Cir. 1996). When reviewing the evidentiary findings of the district court, we apply the law of the circuit in which the district court sits, Micro Chem., Inc. v. Lextron, Inc., 317 F.3d 1387, 1390-91 (Fed. Cir. 2003), which in this case is the Eighth Circuit.

We agree with Monsanto that the factual findings of the district court were not clearly erroneous. David does not dispute that he planted Roundup Ready® soybean seeds in 2003; rather, he claims that the Roundup Ready® seeds that he planted were acquired from authorized dealers. To dispute this claim, Monsanto presented scientific field tests demonstrating that David's soybean fields had been planted exclusively with Roundup Ready® soybeans, invoices proving that David had purchased large quantities of glyphosate-based herbicides, government documents of David's planting dates, and evidence that David had not purchased enough Roundup Ready® seeds to fully plant his fields by those dates. In response, David offered inconsistent testimony regarding

what he actually planted in 2003.  David, 448 F. Supp. 2d at 1092.  David changed his version of events at least three times, including claiming that he planted only the perimeters of his fields with Roundup Ready® seed, while planting the interior of his fields with conventional seed.  Id.  David's testimony, and that of his daughter, was the only evidence offered to refute Monsanto's case.  Due to his continually changing testimony, the court disregarded much of David's testimony.  See id.  Given David's unreliability as a witness, and a complete lack of other evidence supporting his claims, we conclude that the district court did not clearly err in determining that David planted saved seed.

David also argues that the seed report tests conducted by Monsanto and the testimony of Monsanto's expert Koppatschek, which relied on those seed report tests, were improperly admitted at trial.  David further argues that had those pieces of evidence been excluded, the court would not have had sufficient evidence from which to find that David saved seed.

David's arguments to exclude Koppatschek's testimony are unpersuasive.  Rule 702 of the Federal Rules of Evidence allows expert testimony if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702.  David does not suggest that Koppatschek's testimony is unreliably applied or based on unreliable methods or insufficient data; rather, he challenges Koppatschek's reliance on the seed report tests that were produced by Monsanto's scientific team, but not by Koppatschek personally.

David's challenge fails, however, because the Federal Rules of Evidence

establish that an expert need not have obtained the basis for his opinion from personal perception. See e.g., Sweet v. United States, 687 F.2d 246, 249 (8th Cir. 1982); Data Line Corp. v. Micro Techs., Inc., 813 F.2d 1196, 1200-01 (Fed. Cir. 1987). Likewise, numerous courts have held that reliance on scientific test results prepared by others may constitute the type of evidence that is reasonably relied upon by experts for purposes of Rule of Evidence 703. See e.g., Ratliff v. Schiber Truck Co., 150 F.3d 949, 955 (8th Cir. 1998) (holding that expert testimony regarding a report prepared by a third party was properly allowed); see also Gussack Realty Co. v. Xerox Corp., 224 F.3d 85, 94, 95 (2d Cir. 2000) (finding that testimony was properly admitted from an expert who did not conduct his own tests). "Unlike an ordinary witness, see Rule 701, an expert is permitted wide latitude to offer opinions, including those that are not based on first hand knowledge." Daubert v. Merrell Dow Pharm. Inc., 509 U.S. 579, 592 (1993). Koppatschek's reliance on the scientific reports prepared by his team is therefore the type of reliance that is reasonable for expert witnesses. Furthermore, Koppatschek's testimony is admissible, regardless of the admissibility of the seed report.[4] Rule 703 expressly authorizes the admission of expert opinion that is based on "facts or data" that themselves are inadmissible, as long as the evidence relied upon is "of a type reasonably relied upon by experts in the particular field in forming opinions." Fed. R. Evid. 703. The tests conducted in this case are certainly of the type relied upon by experts, and Koppatschek's testimony was therefore admissible.

---

[4] We need not decide whether the seed report itself was admissible, nor does it appear that David makes this argument on appeal. Even assuming, arguendo, that it was improperly admitted, in this case it is cumulative and does not appear to have had any prejudicial effect; it was therefore harmless error. See ATD Corp. v. Lydall, Inc., 159 F.3d 534, 550 (Fed. Cir. 1998).

B.    Damages

David also appeals the district court's damages calculation. The district court awarded Monsanto a reasonable royalty for David's infringing use of the '605 patent, enhanced damages, attorney fees, costs, and prejudgment interest. David challenges the attorney fees and cost awards, as well as the reasonable royalty, but does not challenge the enhanced damages or prejudgment interest. We review the district court's damages decision for an "erroneous conclusion of law, clearly erroneous factual findings, or a clear error of judgment amounting to an abuse of discretion." Golight, Inc. v. Wal-Mart Stores, Inc., 355 F.3d 1327, 1338 (Fed. Cir. 2004) (citing Grain Processing Corp. v. Am. Maize-Prods. Co., 185 F.3d 1341, 1349 (Fed. Cir. 1999).

1.    Attorney Fees and Costs

On appeal, David makes four arguments for reducing or eliminating the district court's award of attorney fees and costs. First, he argues that this is not an exceptional case as required for the award of attorney fees under 35 U.S.C. § 285. Second, he argues that the attorney fee provision in the Technology Agreement is unenforceable because that provision appears on the reverse side of the agreement, while the signature page is on the front. Third, David claims that the amount of the attorney fee award ($323,140.05) does not bear a reasonable relation to the result achieved as required under Perricone v. Medicis Pharmaceutical Corp., 432 F.3d 1368 (Fed. Cir. 2005). And fourth, David urges this court to limit the amount of attorney fees awarded under the Technology Agreement to an amount that would be recoverable under 35 U.S.C. § 285 and 28 U.S.C. §§ 1920, 1821(b).

In reply, Monsanto maintains that the district court had ample reason to conclude

that David's case was "exceptional."  According to Monsanto, David's "deceitful" litigation tactics prolonged Monsanto's case and increased its fees and costs, and the district court was within its discretion to award additional fees to Monsanto. Furthermore, Monsanto argues that David's legal arguments limiting the attorney fees and costs are without merit.

We review a finding that a case is "exceptional" for clear error.  Perricone, 432 F.3d at 1380.  We review an award of attorney fees in an exceptional case for abuse of discretion.  Id.

We agree with Monsanto that the district court's decision to award attorney fees was not an abuse of discretion.  David knew that saving seed was a violation of the Technology Agreement, yet he did so anyway.  David, 448 F. Supp. 2d at 1099.  He attempted to cover up his infringement and deceive Monsanto.  Id.  This is not a case of a farmer unknowingly infringing a patent.  It is a case of a farmer with apparent disregard for patent rights, license agreements, and the judicial process.  With that in mind, as well as the record evidence of David's inconsistent testimony, we agree with the district court that this is an "exceptional" case under Perricone, and we find that the awarding of attorney fees was within the discretion of the district court.

David's argument that the contractual provision is invalid also fails.  We have decided this same issue—whether contractual provisions appearing on the back of a contract are enforceable—in a case involving a nearly identical Technology Agreement. In McFarling, we held that, absent a showing of fraud, a "party who signs an agreement is bound by its terms."  McFarling, 302 F.3d at 1295-96.  We see no reason to deviate from that ruling here, and David has not claimed that his signing of the Technology

Agreement was fraudulently procured.

Lastly, we reject David's argument that the attorney fees and costs stipulated to in the Technology Agreement are limited by statute. David urges this court to limit attorney fees to those recoverable under 35 U.S.C. § 285. He also urges us to limit the award of costs to the amount available under 28 U.S.C. § 1920. David's use of 35 U.S.C. § 285 in this case, however, is inapposite. That statute awards attorney fees to patent holders like Monsanto, but the Technology Agreement here also does. Having violated the Technology Agreement, there is no reason why its attorney fee provision cannot be enforced.

Similarly, 28 U.S.C. § 1920 does not set maximum costs around which private parties may not contract. See e.g., TCBY Sys., Inc. v. RSP Co., 33 F.3d 925 (8th Cir. 1994). That statute limits the amount that federal courts may tax as costs in the absence of "explicit statutory or contractual authorization to the contrary." U.S. v. Mink, 476 F.3d 558, 564 (8th Cir. 2007) (emphasis added) (quoting U.S. v. Hillard, 909 F.2d 1114, 1142 (8th Cir. 1990)). Having held that David breached the Technology Agreement, there is no reason that the amount of contractual costs authorized therein should be limited by § 1920. Thus, the costs agreed to in the Technology Agreement are enforceable, even though those costs exceed the costs recoverable under § 1920.

The district court awarded Monsanto the full amount of its requested costs pursuant to the Technology Agreement; $164,608.03. The district court alternatively awarded Monsanto costs of $30,542.99, the amount requested under 28 U.S.C. § 1920. Those costs appear to be duplicative of the Technology Agreement costs award granted to Monsanto and therefore are not recoverable in light of our affirmance of the

Technology Agreement costs award. There is no basis for a double assessment of costs.

We therefore affirm the district court's award to Monsanto of $10,000 in enhanced damages, $164,608.03 in costs, and $323,140.05 in attorney fees.

2. Reasonable Royalty

David next argues for a reduction of the district court's infringement damages award. David argues that the number of infringing units of seed that the district court found he had planted (4,110 units) was not supported by the evidence. He also claims that the reasonable royalty awarded for each unit ($55.04) was not supported by the evidence, that the court's adoption of that figure was a violation of the doctrine of collateral estoppel, and that the court should have used the $7.75 Technology Fee as the reasonable royalty figure.

Monsanto counters that the number of infringing seed units planted by David was correctly calculated by the district court, and that the district court properly relied on expert testimony in arriving at the 4,110 unit figure. Monsanto also notes that the royalty for each unit of seed is the same as that upheld in <u>Monsanto Co. v. McFarling</u>, 488 F.3d 973 (Fed. Cir. 2007), cert. denied, 2008 WL 59323 (Jan. 7, 2008) ("<u>McFarling III</u>"), and <u>Monsanto Co. v. Ralph</u>, 382 F.3d 1374 (Fed. Cir. 2004), and should thus be upheld here as well.

At trial, Monsanto's expert testified that after applying the multi-factor <u>Georgia Pacific</u> test he calculated a reasonable royalty for David's infringement at $66 per bag. The district court, however, relying on this court's decision in <u>Ralph</u>, awarded a $55.04 royalty instead. <u>David</u>, 448 F. Supp. 2d at 1093; <u>see</u> <u>Ralph</u> 382 F.3d at 1383. David's

argument that the court should have adopted the technology fee paid on each purchase of Roundup Ready® soybean has come before this court previously in both Ralph and McFarling III. As in those cases, we reject the argument here. Ralph held that the Technology Fee is "not an established royalty for planting . . . saved seed." Ralph, 382 F.3d at 1384. David argues that his case is distinguishable from Ralph due to the fact that there is no evidence that David, unlike Ralph, transferred seed to others. Regardless of any perceived difference in the relative levels of culpability between David and Ralph, our decision in Ralph stands for the fact that the Technology Fee is not an established royalty for the infringing act of saving seed. As for the specifics of this case, the district court was within its discretion to rely on the only reasonable testimony presented to it, that of Monsanto's expert. Furthermore, we do not see how the court's reduction of the royalty from $66.00 to $55.04 implicates the doctrine of collateral estoppel. We therefore uphold the district court's finding of a royalty of $55.04 per unit.

In calculating the number of infringing seed units planted by David, the district court had the difficult task of determining the total soybean acreage planted by David in 2003 and the density of seed used in those fields.[5] David does not challenge the district court's finding that he planted a total of 2,222 acres in 2003. He does, however, challenge the district court's finding of an average planting density of 107.5 pounds per

---

[5] The district court multiplied David's soybean acreage by the planting density to obtain the total weight of soybean seeds planted. The court then divided that total by fifty pounds to obtain the total number of soybean units planted. Subtracting the 645 units legitimately purchased before planting, the court obtained the total infringing units. Multiplying that number by the reasonable royalty ($55.04/bag), the court obtained the final damage figure.

acre.  To arrive at that figure, the district court averaged two density figures offered at trial; Monsanto's expert Koppatschek established a planting rate of 95 pounds per acre, based on samples taken from David's fields, and David offered a high estimate of 120 pounds per acre during a deposition taken on November 9, 2004.  David argues that the density calculated by the district court was not supported by the evidence and furthermore that the evidence supports a much lower figure.

Monsanto counters that the density calculation is supported both by expert testimony and David's own testimony at deposition.  Monsanto claims that the testimony David cites as supporting a lower density figure was based on merely hypothetical discussions of soybean farming generally, and not related to the specifics of David's actions in 2003.

On this point, we agree with David that the density calculation was clearly erroneous.  In so concluding, we appreciate the difficulty faced by the district court in arriving at a density figure in this case.  In arguing for reduction of the density calculation, David's appellate brief lists at least four different rates at which he claimed to have planted soybeans, ranging from three-quarters of a unit (37.5 pounds) to one and one-half units (75 pounds).  The record demonstrates that much of this confusion stemmed from the different planting rates used for conventional soybean seeds and Roundup Ready® seeds, due both to the better yield and the higher price of the Roundup products.  The confusion, certainly, also stemmed from David's unreliability, as noted by the district court and as evidenced throughout the record.

However, David's estimate of 120 pounds per acre, when properly read in context, did not refer to the density of his Roundup Ready® planting.  In the testimony

at issue, there was some confusion between David and the questioning attorney as to the type of seed being referred to. In fact, immediately following David's response there was a discussion between Monsanto's attorney and David's attorney as to which type of seed was being referenced. Directly following this exchange, Monsanto's attorney rephrased his question and directly referenced Roundup Ready® seed. David answered that the density "could be like a unit," or fifty pounds. In all of David's extensive previous testimony, he testified that the upper limit for his planting of Roundup Ready® seed never exceeded one and one-half units (seventy-five pounds). The 120 pound density figure David offered clearly was not based on Roundup Ready seed, but rather conventional seed. The use of this anomalous 120 pound figure, in a confused context, amounted to clear error.

We thus remand to the district court for additional fact finding concerning the Roundup Ready® soybean density in David's fields in 2003. We note that there was testimony on the record in which David directly addressed his Roundup Ready® soybean planting rate; this testimony varied widely, but seems to have ranged from three-quarters of a unit (37.5 pounds) to one and one-half units (75 pounds). Use of any of those figures, which are explicitly directed to the density of Roundup Ready® soybeans, would be appropriate. Additionally, we find that, although the court's use of David's estimate of 120 pounds per acre was clearly erroneous, the court's use of the 95 pounds per acre figure arrived at by Monsanto's expert, Koppatschek, was not. Should the court decide that David's testimony on this issue was so unreliable as to be without value, the court would be well within its discretion to adopt the figure obtained by Koppatschek. The district court should make this determination, however, not this

court, following which the reasonable royalty calculation outlined in footnote 5 should be followed.[6]

## CONCLUSION

Accordingly, we affirm the district court's finding of infringement of the '605 patent, the court's award of attorney fees, costs, enhanced damages, and prejudgment interest, and the court's reasonable royalty calculation of $55.04 per unit. We vacate the district court's calculation of seed density of 107.5 pounds per acre. The case is remanded to the district court for further proceedings consistent with this opinion.

<u>AFFIRMED IN PART, VACATED IN PART, and REMANDED</u>

---

[6] In light of our adjustment of the total damages awarded, the district court should adjust the amount of prejudgment interest accordingly.