# United States Court of Appeals for the Federal Circuit

05-1292

SUMMIT TECHNOLOGY, INC.,

Plaintiff-Appellant,

v.

NIDEK CO., LTD., NIDEK, INC., and NIDEK TECHNOLOGIES, INC.,

Defendants-Appellees.

Russell E. Levine, P.C., Kirkland & Ellis LLP, of Chicago, Illinois, argued for plaintiff-appellant. With him on the brief was Christopher R. Liro.

Neil B. Siegel, Sughrue Mion, PLLC, of Washington, DC, argued for defendants-appellees. With him on the brief were Paul J. Wilson and Robert M. Masters. Of counsel on the brief was David S. Godkin, Birnbaum & Godkin LLP, of Boston, Massachusetts.

Appealed from: United States District Court for the District of Massachusetts

Senior Judge Edward F. Harrington

# United States Court of Appeals for the Federal Circuit

05-1292

SUMMIT TECHNOLOGY, INC.,

Plaintiff-Appellant,

v.

NIDEK CO., LTD., NIDEK, INC., and NIDEK TECHNOLOGIES, INC.,

Defendants-Appellees.

_____

DECIDED:  January 26, 2006

_____

Before RADER, BRYSON, and GAJARSA, <u>Circuit Judges</u>.

BRYSON, <u>Circuit Judge</u>.

For the second time, we are asked to review the district court's award of costs in this case.  Because certain portions of the award were unsupported by evidence or were beyond the scope of statutorily allowed costs, we vacate certain portions of the award and direct that the award be reduced from $388,230.83 to $173,434.82.

I

After prevailing on the merits of the underlying patent infringement suit, Nidek submitted its bill of costs for $465,875.63.  Summit challenged various components of that bill of costs.  In response to that challenge, Nidek agreed that $13,434.06 of the claimed costs were improper and submitted a revised bill requesting $452,441.57.  The district court, without explanation, awarded Nidek $257,660.13.  <u>Summit Tech., Inc. v.</u>

<u>Nidek Co.</u>, No. 98-12611-EFH (D. Mass. June 16, 2004). Summit appealed that award, and Nidek cross-appealed. A panel of this court vacated the award and remanded for further proceedings, including a specification of findings. <u>Summit Tech., Inc. v. Nidek Co.</u>, 117 Fed. Appx. 107, 108 (Fed. Cir. 2004). On remand, the district court held an evidentiary hearing, which consisted entirely of direct and cross-examination testimony by Neil B. Siegel, an attorney with the law firm of Sughrue Mion, PLLC. Mr. Siegel was lead trial counsel in the underlying suit, and he signed Nidek's bill of costs. At that hearing, Nidek conceded that certain expenses claimed in its original bill of costs were either beyond the scope of 28 U.S.C. § 1920, which lists the expenses that may be taxed as costs under Federal Rule of Civil Procedure 54(d)(1), or were not related to the present litigation. Based on that concession, the district court reduced the award to $388,230.83, which was approximately $130,000 more than the court's original award.[1] In its order, the district court stated that it found Mr. Siegel's testimony to be "most credible and fully supported by the documentary evidence." Summit appealed, challenging certain portions of the award pertaining to the preparation of trial exhibits, photocopy expenses, and deposition transcript expenses.

In response to Summit's opening brief on appeal to this court, Nidek again conceded error, this time admitting that $15,635.25 of its photocopy expenses were for database development by an outside vendor, a cost that is clearly beyond the scope of section 1920. In addition to database development being non-taxable under section

---

[1] Our computation of the sum of the cost totals in the spreadsheet offered in support of the reduced request results in a total of $388,190.83, not $388,230.83. Because neither party has challenged the accuracy of the latter sum, we assume there may be some explanation for the disparity, and we treat that number as correct.

1920, the line item for that expense was apparently double counted in Nidek's original bill of costs. One of those line items was removed before this appeal, so the item is included—although still improperly—only once in the award presently before this court. At oral argument on appeal, Nidek further conceded that at least one deposition transcript expense (in the amount of $803.51) was double counted in the district court's second award. Based on those errors, Nidek ultimately conceded that it was entitled to no more than $371,792.07.

II

Although a district court's award of costs under Federal Rule of Civil Procedure 54(d)(1) is reviewed for abuse of discretion, the court's discretion is limited to awarding costs that are within the scope of 28 U.S.C. § 1920. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445 (1987). Section 1920 provides, in pertinent part, that the following costs may be taxed: "(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; . . . [and] (4) Fees for exemplification and copies of papers necessarily obtained for use in the case . . . ." Whether a particular expense may be recovered under section 1920 is an issue of statutory construction, subject to de novo review. See, e.g., Kohus v. Toys 'R' Us, Inc., 282 F.3d 1355, 1357 (Fed. Cir. 2002); Whitfield v. Scully, 241 F.3d 264, 269 (2d Cir. 2001); Russian River Watershed Prot. Comm. v. City of Santa Rosa, 142 F.3d 1136, 1144 (9th Cir. 1998). Our interpretation of section 1920 in this case is governed by First Circuit law because this issue is one on which we defer to regional circuit law and because this case comes to us from a district court within the First Circuit. See Kohus, 282 F.3d at 1357.

Summit first argues that the district court erred by awarding Nidek $98,786.79 for fees paid to FTI Consulting, Inc. FTI assisted Nidek's counsel in preparing trial exhibits, including computer animations, videos, Powerpoint presentations, and graphic illustrations.[2] Nidek argues that First Circuit law allows a district court to award costs related to preparing such trial exhibits if the court finds that the exhibits provided "real assistance to the court." Summit, on the other hand, contends that such exhibits are neither "exemplification[s] [nor] copies of papers necessarily obtained for use in the case," 28 U.S.C. § 1920(4), and that the costs associated with preparing the exhibits are therefore not taxable as costs under Rule 54(d)(1). We agree with Summit.

In Kohus v. Toys 'R' Us, Inc., 282 F.3d 1355 (Fed. Cir. 2002), this court rejected the broad interpretation of the term "exemplification" that Nidek offers here. The court looked instead to Black's Law Dictionary, which defines "exemplification" as "[a]n official transcript of a public record, authenticated as a true copy for use as evidence." Id. at 1359 (quoting Black's Law Dictionary 593 (7th ed. 1999)). Under that definition, we held that a video animation is not an "exemplification."

---

[2] In its brief submitted to the district court, Nidek referred to FTI's services as "computer animation services." At the hearing in the district court, Mr. Siegel said that FTI assisted with "the totality of the trial exhibits that were used at trial." At the hearing on costs, however, each of the trial exhibits he pointed to as exemplary of FTI's work were animations, computer graphics, or Powerpoint slides. Moreover, FTI's invoices show that FTI's services were for animations, videos, and computer graphics: $6,930.00 was for project planning; $80,152.50 was for animation services; $2,675.00 was for video services; $3,521.25 was for Photoshop and Powerpoint services; $4,989.60 was for physical models; and $518.44 was for overhead expenses. There is no suggestion that the physical models were submitted as trial exhibits.

The issue in Kohus was governed by Sixth Circuit law, and because the Sixth Circuit had never addressed the question whether video animations were within section 1920, our holding was framed in terms of "determin[ing] how that circuit would likely resolve the issue." Id. at 1358 n.4 (quotation marks and citation omitted). We held that the Sixth Circuit's reasoning in Swan Carburetor Co. v. Chrysler Corp., 149 F.2d 476 (6th Cir. 1945), supported a narrow interpretation of the statute with respect to trial exhibits, and so determined that the Sixth Circuit would likely follow the definition in Black's Law Dictionary and exclude video animations from the scope of section 1920(4).

Nidek argues that First Circuit law envisions a broader definition of "exemplification." In support of that contention, Nidek primarily relies on Emerson v. National Cylinder Gas Co., 147 F. Supp. 543 (D. Mass. 1957), aff'd, 251 F.2d 152 (1st Cir. 1958). In considering whether to grant costs for preparing charts used as trial exhibits, the district court in Emerson stated that "[t]he test of whether a chart expense should be taxable as costs under [section 1920] is the extent to which it was reasonable to go to furnish 'real assistance' to the court." Emerson, 147 F. Supp. at 545. That statement, however, cannot be viewed as representing the law of the First Circuit.

First, when the Emerson case was appealed, the party against whom the cost award had been entered did not challenge the propriety of allowing costs for trial exhibits. See Emerson, 251 F.2d at 153, 158. The First Circuit therefore did not address that question. Second, Emerson predated Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437 (1987), in which the Supreme Court held that a district court's discretion under section 1920 is limited to the kinds of costs permitted under the statute. That is, the court may exercise discretion as to the cost items listed under

section 1920, but may not award costs for items that are not listed in section 1920. Id. at 445. Prior to Crawford Fitting, many courts interpreted Rule 54(d) as a broad grant of discretion with respect to costs, an interpretation that stemmed from the "practice formerly followed in equity, where courts possessed the power to award costs not expressly provided by statute." Id. at 447 (Marshall, J., dissenting). Indeed, one of the cases cited by the district court in Emerson to support its expansive interpretation of section 1920, Barber-Coleman Co. v. Withnell, 28 F.2d 543, 544 (D. Mass. 1928), expressly relied on that equity principle to hold that certain costs "ought in justice to be taxable." In light of the inconsistency between the approach employed by the Emerson court and the approach dictated by the Supreme Court in Crawford Fitting, we do not view Emerson as representing the current law of the First Circuit.[3]

In fact, to the extent that the First Circuit's law is shaped by decisions of district courts within that circuit, we note that the only recent such case took a narrow view of section 1920, holding that the cost of preparing enlargements for use as trial exhibits was beyond the scope of section 1920. Shared Med. Sys. v. Ashford Presbyterian Cmty. Hosp., 212 F.R.D. 50, 55-56 (D.P.R. 2002). And in one of the few First Circuit opinions addressing section 1920, that court also took a narrow view of section 1920, although not in the context of trial exhibits. See In re Two Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig., 994 F.2d 956 (1st Cir. 1993). In that case, the

---

[3]    Only one other reported case from a district court within that circuit has followed the broad rule announced by the district court in Emerson. See H.C. Baxter & Bro. v. Great Atl. & Pac. Tea Co., 44 F.R.D. 49, 52 (D. Me. 1968) (allowing recovery of expenses for preparing color photographs and slides). That case, however, also predated Crawford Fitting and appears inconsistent with Crawford's restrictive approach to costs.

court rejected the contention that overhead expenses for centralized litigation services were taxable under section 1920. In doing so, the court noted the "stunted reach of Rule 54(d)," and recognized that "Rule 54(d) cannot be stretched beyond the parameters defined in section 1920." Id. at 964.

Within that context, our task is to determine how the First Circuit would likely decide the question presented in this case. With no First Circuit case law directly addressing that question, it is instructive to look to the law of other circuits. Several circuits follow the same narrow definition of "exemplification" that this court articulated in Kohus and exclude from section 1920(4) the expense of preparing trial exhibits, especially video animations. See Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc., 249 F.3d 1293, 1296-97 (11th Cir. 2001) ("Because the videotape exhibits and the computer animation are neither copies of paper nor exemplifications within the meaning of § 1920(4), . . . taxing these costs was error."); Coats v. Penrod Drilling Corp., 5 F.3d 877, 891 (5th Cir. 1993) (reviewing a request for recovery of travel expenses and enlargements related to trial exhibits and holding that "[t]hese expenses are not included in § 1920 and therefore are not recoverable"); see also Am. Trim, L.L.C. v. Oracle Corp., 230 F. Supp. 2d 803, 806-07 (N.D. Ohio 2002). The Seventh Circuit, by contrast, has adopted a broader definition of exemplification, taken from standard English language dictionaries.[4] See Cefalu v. Vill. of Elk Grove, 211 F.3d 416, 427 (7th

---

[4] It is worth noting, however, that in addition to the common-usage definition, American Heritage Dictionary 621 (4th ed. 2000) (defining "exemplification" as "[t]he act of exemplifying"), standard English language dictionaries also cite the special legal definition of the term, which is considerably narrower, see id. ("Law An officially certified copy of a document."). See also Random House Webster's Unabridged Dictionary 677 (2d ed. 2001) ("Law. an attested copy of a document, under official seal."); Webster's

Cir. 2000) (interpreting "exemplification" to "signif[y] the act of illustration by example, a connotation broad enough to include a wide variety of exhibits and demonstrative aids" (citation omitted)); see also Schering Corp. v. Amgen, Inc., 198 F.R.D. 422, 428 (D. Del. 2001) (holding that, in considering whether a video exhibit is taxable under section 1920(4), "[t]he standard the court will apply to direct its discretion is whether the video materially aided [the judge's] understanding of the technological issues in the case"). Local rules in a few district courts even explicitly contemplate the award of costs associated with preparing trial exhibits, including videos and animations. See, e.g., S.D.N.Y. Local Civ. R. 54.1(c)(6) ("Costs of maps, charts, and models, including computer generated models, are not taxable except by order of court."); N.D. Cal. Civ. Local R. 54-3(d)(5) ("The cost of preparing charts, diagrams, videotapes and other visual aids to be used as exhibits is allowable if such exhibits are reasonably necessary to assist the jury or the Court in understanding the issues at the trial."). No district court in the First Circuit, however, has adopted a local rule addressing these types of expenses.

This court in Kohus noted that "Congress did not use the broad phrase 'demonstrative evidence' in section 1920." Kohus, 282 F.3d at 1359. And even the Seventh Circuit has acknowledged that Congress did not contemplate including costs such as those for computer animations under section 1920. See Cefalu, 211 F.3d at 428 ("Given the costs associated with some of these presentations, this is an area that Congress may wish to revisit and supply further guidance."). In light of the First Circuit's

---

Third New International Dictionary 795 (2002) ("law: an exemplified copy," i.e., "an attested copy or transcript of (a document) under seal").

recognition of the "stunted reach of Rule 54(d)," we are persuaded that the First Circuit would adopt the narrow, legal definition of the term "exemplification" endorsed by the Fifth Circuit, the Eleventh Circuit, and this court applying Sixth Circuit law.

As Moore's Federal Practice notes, "a video exhibit or a physical model may not qualify as an 'exemplification' if it is essentially explanatory and argumentative, serving merely as an aid to the argument of counsel and the explanations of expert witnesses." 10 James Wm. Moore et al., Moore's Federal Practice § 54.103[3][d] (3d ed. 2005). That is precisely the nature of the materials prepared by FTI, as the evidence showed that expert witnesses used those materials simply to explain the case to the jury and the court.[5]  In light of the nature of the materials at issue and our conclusion that the First Circuit would adopt a narrow definition of "exemplification" for purposes of section 1920, we hold that FTI's fees are not taxable as costs.

_____

[5]     Even if the First Circuit were to adopt a broad definition of "exemplification," we believe it would exclude at least a substantial portion of FTI's consulting fees from the cost award.  Section 1920(4) "speaks narrowly of '[f]ees for exemplification and copies of papers,' suggesting that fees are permitted only for the physical preparation and duplication of documents, not the intellectual effort involved in their production." Romero v. City of Pomona, 883 F.2d 1418, 1428 (9th Cir. 1989), overruled in non-pertinent part by Townsend v. Holman Consulting Corp., 914 F.2d 1136, 1141 (9th Cir. 1990) (en banc).  Interpreted otherwise, "it could well swallow up other statutory provisions of the Code and rules, such as the prohibition against the award of attorney's fees or expert witness fees in the normal case."  Id.  The bulk of FTI's invoices show hourly consulting fees, with tasks ranging from "animation" to "client planning meetings." Mr. Siegel acknowledged that he and Nidek's experts worked closely with FTI in developing the exhibits.  That sort of work amounts to trial preparation and strategizing, and is not akin to the cost of photocopying a piece of paper, a cost that section 1920 explicitly contemplates.  See 10 James Wm. Moore et al., Moore's Federal Practice § 54.103[3][d] ("If the demonstrative evidence at issue requires the input of experts or lawyers, the expenses of those professionals in producing the evidence should not be included in any award of costs under § 1920(4).").

Summit next argues that the district court erred in awarding Nidek $200,187.50 in photocopying costs. Summit argues that Nidek's supporting documentation for those expenses was insufficient because various components of the award were based on unsupported estimates or failed to identify whether the documents were "necessarily obtained for use in the case," as is required by section 1920(4). With respect to certain components of the photocopy award, we agree.

Under First Circuit law, photocopy expenses are taxable only "if the costs were reasonably necessary to the maintenance of the action." Rodriguez-Garcia v. Davila, 904 F.2d 90, 100 (1st Cir. 1990). With respect to two categories of photocopy expenses (Sughrue's internal copy expenses and all outside vendor copy expenses), Nidek's bill of costs was based on the actual number of pages that were photocopied for the litigation. In the case of vendor copy expenses, Nidek submitted the vendors' invoices. In those invoices, the vendors charged a variable per-page rate, ranging from 13 to 17 cents, averaging approximately 15 cents per page (the rate Nidek and Summit agreed to before litigation). The total vendor copy expense accounted for every page copied by the vendors as part of this litigation. To account for the fact that some fraction of those copies either were not necessary to the maintenance of the action or were duplicative of other photocopy expenses, Nidek reduced the total vendor invoice charge by 50 percent, which resulted in a charge of $96,311.85 for all outside vendor copying. We agree with Nidek that, in complex patent litigation involving hundreds of thousands of documents and copies, parties cannot be expected to track the identity of each photocopied page along with a record of its relevance to the litigation. Thus, although a

simple 50 percent reduction is a somewhat crude method of accounting for non-necessary copies, we believe the district court acted within its discretion in awarding the vendor costs based on that estimate, particularly in light of the supporting testimony from Mr. Siegel, who explained that his testimony was based on his 35 years of experience and his day-to-day responsibility, as lead counsel, for the litigation in this case. However, we modify the award of outside vendor copy costs to account for the inclusion of $15,635.25 for database development, an error that Nidek conceded in its brief to this court.

With respect to Sughrue's internal copy expenses, Nidek calculated the cost differently. As in the case of vendor copy expenses, Nidek submitted invoices showing the total charges for Sughrue's internal copies. However, the invoice charges were calculated at a rate of 25 cents per page. The total charges from those invoices were reduced by 50 percent—just as in the case of outside vendor copy expenses—but most of that reduction was to account for the fact that Nidek and Summit had agreed to a rate of 15 cents per page. The resulting expense on the bill of costs is $25,321.96.

No explanation was provided for the use of a different methodology in the case of Sughrue's internal copies. In particular, there was no testimony or evidence suggesting that a higher percentage of Sughrue's internal copies was necessary than was true of the vendors' copies. In the absence of any support for the methodology used to calculate the costs for Sughrue's internal copies, that portion of the award was improper. Just as was done for vendor copy expenses, Sughrue's internal copy expenses should be adjusted to the agreed-upon rate of 15 cents per page, and then reduced by 50 percent to account for non-necessary copies. That calculation results in

an award of $15,193.18 for Sughrue's internal copy costs. Thus, we amend the component of the district court's award corresponding to Sughrue's internal copy costs ($25,321.96), reducing it by $10,128.78.

A third category of copy costs is $78,553.69 in internal copy expenses incurred by the law firm of Testa, Hurwitz & Thibeault, LLP, Sughrue's co-counsel in this case. Those submitted costs are unsupported by any evidence of record. Testa did not specifically track photocopy expenses related to its work on this case. Instead, Testa billed Nidek a seven percent overhead fee on top of all of its legal fees for the case. According to Testa's invoices and Mr. Siegel's testimony, that overhead fee included photocopies, telephone, postage, telecopy, local transportation, overtime, Westlaw fees, and all other miscellaneous expenses. Nidek submitted half of that total overhead disbursement as its cost for Testa's internal photocopies necessarily obtained for use in this case.

As the sole support for that estimate, Mr. Siegel testified that:

I could not tell with precision [what Testa's internal photocopy charges were] but I knew how that figure was derived invoice by invoice. And I had a sense roughly as to what the approximate photocopy charges were among these disbursements . . . . [My assumption was] that photocopy expenses in these situations would be approximately about fifty percent of the [seven percent overhead] charge. It would vary from month to month because in some months there would be very little photocopying. And in other months there would be a lot.

Although the district court found Mr. Siegel credible, that testimony is insufficient on its face to support an award of nearly $80,000 in photocopy expenses. Not only is Nidek's estimate of the portion of the overhead attributable to copying "rough," there was not even an attempt to account for the portion of the photocopies that were not necessary to the maintenance of the action. In the absence of accurate photocopy tracking, Nidek

might have pursued some other means of demonstrating Testa's chargeable photocopying expenses. Although section 1920(4) does not demand page-by-page precision, a bill of costs must represent a calculation that is reasonably accurate under the circumstances. See, e.g., Billings v. Cape Cod Child Dev. Program, Inc., 270 F. Supp. 2d 175, 178 n.3 (D. Mass. 2003) (denying request for copying expenses because "defendants have failed to in any way itemize their copying costs"); Pan Am. Grain Mfg. Co. v. P.R. Ports Auth., 193 F.R.D. 26, 37-38 (D.P.R. 2000) (denying expenses "supported only by invoices and checks that set forth lump sums paid for copies").

With respect to this item, Nidek made no serious effort at precision but instead asked the district court to award $78,553.69 in costs that "approximately about" represented Testa's internal copies. Even assuming Nidek's estimate accurately represented the total cost of Testa's internal copying, only a portion of the total copying expenses could be necessary to the maintenance of the action and therefore taxable under section 1920(4). However, we need not determine what portion might have been necessary, because we hold that awarding any costs in the absence of reasonable proof supporting Testa's internal copy expenses was an abuse of discretion. Thus, we vacate the award of $78,553.69, corresponding to Testa's internal photocopy expenses.

C

Finally, Summit challenges certain components of the costs awarded for deposition transcripts, arguing that Nidek failed to support those costs with any evidence, and that certain costs are double counted in the bill of costs. The total award for deposition costs was $38,095.44. With respect to certain deposition expenses, we agree with Summit.

In our review of the joint appendix we discovered at least two deposition charges that were double counted. In its bill of costs and supporting invoices, Nidek included an invoice for $803.51 (invoice number 34996 from the Manhattan Reporting Corporation), and also included the 90-day past due notice for that same invoice. At oral argument Nidek's counsel agreed that $803.51 needed to be subtracted from its deposition costs. In addition, it is clear to us that another invoice, for $414.03, was also double counted, given the invoice date and the amount of the fee. Consequently, an additional $414.03 must be subtracted from Nidek's submitted deposition costs.

With respect to other deposition costs, Summit argues that Nidek's supporting invoices and testimony fail to show who was deposed, and therefore fail to show that the deposition transcripts were "necessarily obtained for use in the case," as required under section 1920(2). With respect to certain invoices, we agree.

Under First Circuit law, "if depositions are either introduced in evidence or used at trial, their costs should be taxable to the losing party." Templeman v. Chris Craft Corp., 770 F.2d 245, 249 (1st Cir. 1985). At a minimum, in order to recover costs for a particular deposition, that standard requires the submitting party to show who was deposed. For several invoices, Nidek failed to do so. Furthermore, several of the invoices do not even indicate what services are included in the invoice charge. That information is critical because the expense of various convenience services, such as expedited transcripts and video services, is not within the scope of section 1920(2). See, e.g., Paul N. Howard Co. v. P.R. Aqueduct & Sewer Auth., 110 F.R.D. 78, 81 (D.P.R. 1986) (citing cases from various circuit and district courts). Without knowing who was deposed or what services were provided, the district court could not have

determined whether the expenses at issue were "necessarily obtained for use in the case," and so could not have determined whether those expenses were taxable under section 1920(2).

In particular, for $10,473.96 of the claimed deposition costs, Nidek submitted the invoices it received from Sughrue, rather than the invoices issued by the court reporting service. Sughrue's invoices merely list a dollar amount along with the name of a court reporting service, presumably the service that took some deposition. Along with the risk of double counting—which has been shown to be a real danger in this case—the district court could not have determined that any of those particular deposition expenses were taxable costs under section 1920(2). Thus, we vacate that component of the district court's award, along with an additional $1,217.54 to correct for the double counting we have identified. With those corrections made, Nidek is entitled to recover $26,403.94 for deposition transcripts.

* * * * *

Ultimately, Nidek and the district court seem to have relied heavily on the proposition that the overall cost award in this case was not disproportionate to the stakes or the complexity of the underlying patent infringement suit. While that may be true, the fact that a case is particularly complex does not give the prevailing party an unchecked right to collect nearly $400,000 in costs. Cost awards are bound by the constraints of section 1920, and, when challenged, a prevailing party must offer some reliable documentation or other proof that its bill of costs represents the allowable costs that it actually and necessarily incurred during the litigation. In several instances Nidek

has failed to offer such documentation or proof, and so is not entitled to recover those costs, no matter whether the total amount of the billed costs may seem reasonable.

For the foregoing reasons, we modify the district court's award of costs. We vacate the award of costs for FTI's fees in the amount of $98,786.79, we reduce the award of photocopy costs by $104,317.72, and we reduce the award of deposition transcript costs by $11,691.50. We uphold the remainder of the award of costs, in the amount of $173,434.82, and we direct the entry of an award in that amount.

<u>AFFIRMED IN PART, REVERSED IN PART, and REMANDED</u>.