# United States Court of Appeals for the Federal Circuit

---

**IN RE RICOH COMPANY, LTD. PATENT LITIGATION**

---

**SYNOPSYS, INC.,**
*Plaintiff-Appellee,*

v.

**RICOH COMPANY, LTD.,**
*Defendant-Appellant.*

---

**RICOH COMPANY, LTD.,**
*Plaintiff-Appellant,*

v.

**AEROFLEX INCORPORATED, AMI SEMICONDUCTOR, INC.,**
**MATROX ELECTRONIC SYSTEMS, LTD., MATROX GRAPHICS, INC.,**
**MATROX INTERNATIONAL, INC., MATROX TECH, INC.,**
AND **AEROFLEX COLORADO SPRINGS, INC.,**
*Defendants-Appellees.*

---

2011-1199

---

Appeal from the United States District Court for the Northern District of California in case no. 03-CV-2289, Judge James Ware.

---

Decided: November 23, 2011

---

RICHARD G. FRENKEL, Latham & Watkins, LLP, of Menlo Park, California, argued for plaintiff-appellee and defendants-appellees.  With him on the brief were RON E. SHULMAN and TERRENCE J.P. KEARNEY .

KENNETH W. BROTHERS, Dickstein Shapiro, LLP, of Washington, DC, argued for defendant-appellant and plaintiff-appellant.  With him on the brief were GARY M. HOFFMAN, AMANDA S. PITCHER, and CATHY CHEN.

---

Before LOURIE, BRYSON, and DYK, *Circuit Judges.*

DYK, *Circuit Judge.*

Ricoh Company, Ltd. ("Ricoh") appeals the decision of the United States District Court for the Northern District of California awarding $938,957.72 in costs under 28 U.S.C. § 1920 to Aeroflex, Inc., et al., and Synopsys, Inc. (collectively, "Synopsys").  *In re Ricoh Co., Ltd. Patent Litig.*, No. 03-CV-2289, slip op. at 16 (N.D. Cal. Sept. 29, 2010) ("*Taxation Order*").  We affirm in part, reverse in part, vacate in part, and remand.

## BACKGROUND

A dispute arose between Ricoh, the owner of U.S. Patent No. 4,922,432 ("the '432 patent") (directed to systems and processes for the design of application-specific integrated circuits) and Synopsys, which was alleged to sell

software for an infringing process. In January 2003, Ricoh filed a patent infringement action in the District of Delaware against seven of Synopsys's customers, all of whom designed and manufactured computer chips using Synopsys's software, asserting that the manufacturing process infringed the '432 patent. In May 2003, Synopsys responded by filing a declaratory judgment action against Ricoh in the Northern District of California, seeking a declaratory judgment of noninfringement, invalidity, and unenforceability of the patent. The two actions were eventually consolidated in the Northern District of California. After nearly seven years of litigation, the district court granted Synopsys's motion for summary judgment of noninfringement on April 15, 2010. We affirmed without opinion. *In re Ricoh Co., Ltd. Patent Litig.*, 412 F. App'x 297, 298 (Fed. Cir. 2011).

After judgment was entered against Ricoh, Synopsys filed a Bill of Costs seeking approximately $1.375 million in costs. Ricoh objected to the Bill of Costs. Synopsys filed an amended Bill of Costs seeking $1,208,616.09, to which Ricoh again objected. The Clerk disallowed $353,508.40 of the costs sought by Synopsys for a final taxation of $855,107.69. At the request of both parties, the District Court reviewed the Clerk's taxation of costs and increased the allowed costs to $938,957.72. The district court stayed Ricoh's payment of the costs pending this court's decision on the merits. *Taxation Order*, slip op. at 16.

On November 12, 2010, the district court entered a judgment, awarding costs in the amount of $938,957.72 plus applicable post-judgment interest. Ricoh timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

### DISCUSSION

The Federal Rules of Civil Procedure provide that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs . . . should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Synopsys is clearly the prevailing party. Section 1920, however, "control[s] a federal court's power to hold a losing party responsible for the opponent's . . . fees" by limiting what costs can be awarded. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444 (1987). In pertinent part, section 1920 grants the district court the authority to tax as costs

> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; . . .
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; [and] . . .
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. There are disputes as to three categories of costs taxed against Ricoh: the costs of an electronic document database under subsection 4 ($234,702.43), exemplification fees and copy costs under subsection 4 ($322,515.71), and deposition and interpreter costs under subsections 2 and 6 ($131,247.28). The total amount in dispute is $688,465.42.

We apply regional circuit law, in this case Ninth Circuit law, in interpreting section 1920. *See Summit Tech., Inc. v. Nidek Co.*, 435 F.3d 1371, 1374 (Fed. Cir. 2006).

The burden is on the losing party to demonstrate why the costs should not be awarded. *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1079 (9th Cir. 1999). A district court's award of costs is reviewed for abuse of discretion. *Summit Tech.*, 435 F.3d at 1374; *Miles v. California*, 320 F.3d 986, 988 (9th Cir. 2003). However, whether a particular expense falls within the purview of section 1920, and thus may be taxed in the first place, is an issue of statutory construction, subject to de novo review. *Summit Tech.*, 435 F.3d at 1374.

I

Ricoh contends that the district court erred in awarding $234,702.43 to Synopsys for Stratify, a third-party electronic database service, representing the portion of the database costs paid by Synopsys. A brief history of the Stratify database is necessary. Ricoh sought the production of e-mails and other internal documents from Synopsys's customers who used its software to design and manufacture integrated circuits. The parties were unable to agree on the form of production. Synopsys proposed three alternatives—providing a hard copy production of the e-mails, converting them to TIFF format and producing them as such, or loading them onto a local terminal at its offices and allowing Ricoh's counsel to review them on site only. Ricoh objected to these forms of production, demanding that the e-mails be produced in native format, in their ordinary course of business. Ricoh suggested doing so using Stratify, an electronic discovery company that provides secure document processing, review, production and hosting services, and that the costs be divided between the parties. As described below, Synopsys agreed to the use of Stratify and to the division of costs.

Synopsys contends that, because Stratify was used as the exclusive means for producing e-mails, the full cost of

Stratify is taxable as "fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case" under section 1920(4). Ricoh in turn argues that Stratify does not fall under section 1920(4) because it was a "document review database" (as opposed to a form of document production) for the convenience of counsel and not necessary for use in the case.

Under section 1920(4), exemplification and copying costs for producing documents in discovery are recoverable. This is reflected in Northern District of California Civil Local Rule 54-3(d)(2), which permits taxing "[t]he cost of reproducing disclosure or formal discovery documents when used for any purpose in the case." N.D. Cal. Civ. R. 54-3(d)(2). Here, the district court did not abuse its discretion in concluding that, absent a contrary agreement such as we conclude existed in this case, costs associated with Stratify were taxable because "the Stratify database was used as a means of document production in this case." *Taxation Order*, slip op. at 13.

The act of producing documents is not so narrowly construed as to cover only printing and Bates-labeling a document. *See Black's Law Dictionary* 1328 (9th ed. 2009) (defining "produce" as "[t]o provide (a document, witness, etc.) in response to subpoena or discovery request"). In the era of electronic discovery, courts have held that electronic production of documents can constitute "exemplification" or "making copies" under section 1920(4). *See, e.g., BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 405 F.3d 415, 420 (6th Cir. 2005) ("[E]lectronic scanning and imaging could be interpreted as 'exemplification and copies of papers.'"). Notably, in 2008, Congress amended section 1920(4) by replacing the phrase "copies of papers" with "making copies of *any materials*," Judicial Administration and Technical Amendments Act of 2008, Pub. L.

No. 110-406, § 6, 122 Stat. 4291, 4292 (emphasis added), to reflect the idea that "electronically produced information [is] [re]coverable in court costs," 154 Cong. Rec. H10270, H10271 (daily ed. Sept. 27, 2008) (statement of Rep. Zoe Lofgren). Thus, the costs of producing a document electronically can be recoverable under section 1920(4).

Here, it was Ricoh that initially suggested using Stratify because it "addresses all of [Synopsys's] integrity and security concerns, while allowing you to easily comply with the requirements for producing the email documents in native format." J.A. 3070. The district court did not err in concluding that Synopsys's act of making available all of the requested e-mail to Ricoh through Stratify constituted electronic production of the e-mail. We do not consider any of the Stratify database costs to fall into the unrecoverable category of "intellectual efforts." *See Romero v. City of Pomona*, 883 F.2d 1418, 1428 (9th Cir. 1989), *overruled in part on other grounds by Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1363 (9th Cir. 1991). "Since the documents were produced in their native form via the database," *Taxation Order*, slip op. at 13, we hold that the basic Stratify costs would be recoverable under section 1920(4), absent an agreement to the contrary. In light of our decision, we need not decide if the additional challenged items related to the database were improperly allowed.

However, Ricoh argues in the alternative that the parties agreed by contract to share the cost of Stratify, and that this agreement precludes cost-shifting. There is no question that parties may agree to share costs that would otherwise be taxable. In *Crawford*, the Supreme Court held "that absent explicit statutory or *contractual authorization* for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the

limitations set out in 28 U.S.C. § 1821 and § 1920." 482 U.S. at 445 (emphasis added). In *Monsanto Co. v. David*, 516 F.3d 1009, 1012 (Fed. Cir. 2008), the parties had entered into a technology agreement that provided that certain costs, not otherwise allowable under section 1920, would be paid to the party licensing the technology if it had to enforce the agreement. We affirmed the district court's full award of costs to the prevailing party according to the agreement because, under *Crawford*, section 1920 "does not set maximum costs around which private parties may not contract." *Id.* at 1017. If parties can exceed the allowable costs under section 1920 by contract, we see no reason why in light of *Crawford* they cannot likewise limit the allowable costs under section 1920 by contract.

There is scant authority from other circuits as to whether a cost-sharing agreement between parties to litigation is controlling as to the ultimate taxation of costs. The primary circuit authority, *Thomas v. Duralite Co.*, held that it was "proper" to exclude from costs awarded certain charges because "[t]he parties had agreed to share the expense for [that] service." 524 F.2d 577, 590 (3d Cir. 1975).[1]

---

[1] The other circuit authority concerning cost sharing agreements, *Saunders v. Washington Metropolitan Area Transit Authority*, is not relevant here. 505 F.2d 331 (D.C. Cir. 1974). *Saunders* involved a challenge to a taxation of costs in favor of the prevailing party for printing the joint appendix in light of an agreement to share those costs. *Id.* at 333. In this context, the agreement to share costs was simply implementing the initial cost-sharing provisions of Federal Rule of Appellate Procedure 30(b): "*Unless the parties otherwise agree*, the cost of producing the appendix shall *initially* be paid by the appellant . . . ." *Id.* at 333–34 n.14 (emphasis added) (citing Fed. R. App. P. 30(b)).

Here, there is no dispute that Synopsys agreed to share the cost of the Stratify database with Ricoh. Synopsys originally proposed that Ricoh "agree to pay half of the costs associated with producing [Synopsys's] e-mails." J.A. 3062. When Ricoh later suggested using Stratify to produce the e-mails, it agreed that "[t]he cost would be divided between the parties." J.A. 3069. The parties then implemented this arrangement by entering into a 14-page agreement with Stratify in which they jointly retained Stratify to perform electronic discovery services. The parties characterized this agreement as a cost-sharing agreement, but never indicated that the cost-sharing was only temporary. Communications between the parties after the agreement with Stratify was executed continued to reflect the cost-sharing agreement. *See, e.g.*, J.A. 3396 ("Accordingly, we . . . will split the cost, pursuant to the contract, of the additional databases."). There is no indication in any of the extensive communications between the parties that they intended this cost-sharing agreement to be anything other than a final settlement of the cost of the Stratify database. If the cost-sharing agreement were designed to be only an interim agreement, it seems likely that there would have been some indication to that effect in either the communications between counsel or the agreement with Stratify. Under these circumstances, the parties' agreement is best interpreted as agreeing to a final, not an interim, sharing of costs.

The parties' agreement to share the cost of the Stratify database is controlling, and we reverse the district court's award of $234,702.43 for Synopsys's share of the database.

## II

Ricoh next challenges $322,515.71 of document copying costs under section 1920(4). The parties do not dispute that Synopsys is entitled to recover from Ricoh the copying and exemplification costs directly associated with discovery material tendered to Ricoh. In fact, Ricoh is not challenging $146,584.83 of Synopsys's copying costs because they were clearly incurred in copying Synopsys's discovery production for Ricoh. The focus of the dispute here is on whether the other $322,515.71 in copying costs claimed by Synopsys are in fact associated with documents tendered to Ricoh and copied for Ricoh. We note at the outset that both parties' briefs were not as helpful as they should have been in assisting us to resolve this dispute.

Under section 1920, the "costs of making copies of any materials" are recoverable "where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). This does not require, however, that the copies actually be used in the case or made part of the record. *Haagen-Dazs Co. v. Double Rainbow Gourmet Ice Creams, Inc.*, 920 F.2d 587, 588 (9th Cir. 1990). The Local Rules further provide that under section 1920(4), although "[t]he cost of reproducing copies of motions, pleadings, notices, and other routine case papers is not allowable," N.D. Cal. Civ. L.R. 54-3(d)(3), "[t]he cost of reproducing disclosure or formal discovery documents when used for any purpose in the case is allowable," *id.* at 54-3(d)(2). Thus, the prevailing party can recover, as costs for reproduction and exemplification under section 1920(4), the costs incurred in preparing a single copy of the original documents produced for the opposing party where that copy is supplied to the opposing party. *See Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 536 (5th Cir. 1999).

"[T]he burden is on the prevailing [party] to establish the amount of compensable costs and expenses to which they are entitled.  Prevailing parties necessarily assume the risks inherent in a failure to meet that burden." *English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1013 (10th Cir. 2001) (alteration in original) (internal quotation marks omitted).  Accordingly, the Local Rules require "[a]ppropriate documentation to support each item claimed."  N.D. Cal. Civ. R. 54-1(a).  In addressing the prevailing party's burden to establish and support the amount to which it is entitled, other circuits have held that a list of costs and expenses must be adequately detailed, identifying the purpose of each expenditure, *English*, 248 F.3d at 1013, and not "filled with generic references such as 'transcripts,' 'publication,' and 'document production,'" *Fabi Constr. Co. v. Sec'y of Labor*, 541 F.3d 407, 414 (D.C. Cir. 2008).  Section 1920 allows the recovery of costs for a prevailing party who establishes that the copied documents were produced by it pursuant to Rule 26 or other discovery rules and that the copies were requested by, and supplied to, the opposing party.

The district court held that the disputed copying costs were recoverable because they "were primarily incurred in connection with the parties' document productions" and "Synopsys provided invoices with sufficient detail as required by the Local Rules."  *Taxation Order*, slip op. at 11.  We disagree and conclude that Synopsys did not meet its burden under section 1920 to establish the amount of costs to which it is entitled.  After reviewing the documentation filed by Synopsys with respect to these disputed reproduction and exemplification costs, we find that the invoices and itemized spreadsheet accompanying Exhibit E were not specific enough to permit the taxation of those costs.  In considering the invoices in Exhibits E through G of Synopsys's Revised Bill of Costs, we are unable in many

instances to determine what documents were being reproduced and to which side the copies were ultimately provided. For example, Item 74 of Exhibit E, a $789.75 invoice for 6,344 copies, only states, "Medium Handling Litigation Copies. 3 Box originals copy x 1." J.A. 1969. The entry for Item 74 in the spreadsheet itemizing the invoices simply states "Document production." J.A. 1790. In fact, many of the invoices and entries in the itemized spreadsheet accompanying Exhibit E simply state the copies were for "Document production."

The phrase "document production" on an invoice does not automatically signify that the copies were produced to opposing counsel. "Document production" and other similarly generic statements on the invoices are unhelpful in determining whether those costs are taxable. *See Fabi Constr. Co.*, 541 F.3d at 414. Many firms make copies of all documents they produce to the other side for their own records. Furthermore, many of the invoices at issue here indicate Howrey LLP, counsel for Synopsys, as the party to which the copied documents were shipped, thus raising the question whether those documents were tendered to Ricoh's counsel. When the prevailing party seeks to recover copying costs related to its own document production, to meet the documentation requirements, the prevailing party must establish, in connection with its proposed Bill of Costs, that the reproduced documents were produced by it pursuant to Rule 26 or other discovery rules; that they were copied at the prevailing party's expense and at the request of the opposing party; and that the copies were tendered to the opposing party. To be sure, "in complex patent litigation involving hundreds of thousands of documents and copies, parties cannot be expected to track the identity of each photocopied page along with a record of its relevance to the litigation." *Summit Tech.*, 435 F.3d at 1378. But, "a bill of costs must

represent a calculation that is reasonably accurate under the circumstances." *Id.* at 1380.

In light of the inadequate documentation, the district court abused its discretion in awarding $322,515.71 for reproduction and exemplification disputed by Ricoh.[2] At the same time it is far from clear that the $146,584.83 conceded by Ricoh represents the full costs of copying the documents produced for Ricoh. Under the circumstances we think the best course is to vacate the district court's award in this respect and to remand to the district court for further consideration.[3]

On the remand, we do not foreclose the district court from awarding additional copying costs based on further documentation and/or affidavits from the parties that demonstrate that the copies were produced pursuant to Rule 26 or other discovery rules and that the copies were ultimately provided to Ricoh.[4] The district court may

---

[2] We recognize that the district court "reduced the taxable amount for exemplification by $32,742.61, which is the amount associated with extra copies and CD/DVDs that do not appear to be reasonably necessary." *Taxation Order*, slip op. at 11 n.20. But this reduction was addressed to a different problem.

[3] Ricoh also challenges an award of costs for shipping fees and document assembly fees for tabs and folders. The district court would not abuse its discretion in awarding such costs if they related to categories of documents as to which the recovery of reproduction costs under section 1920(4) is appropriate.

[4] We note an additional dispute as to whether Synopsys should be able to recover costs for blowback copies of documents produced in electronic form for Ricoh. Ricoh represented at oral argument that no such blowback copies were requested. Oral Arg. at 37:04–37:31, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/search/audio.html (search "Appeal Number" for "2011-1199") ("Ricoh never requested blowbacks.

choose to make a reasonable estimate of recoverable copying costs based on an estimate of the total number of pages of discovery that Ricoh requested be copied multiplied by a reasonable price per page.

### III

Last, Ricoh challenges the award of $102,070.67 in costs for transcriptions of depositions that it believes were not reasonably necessary, as well as $29,176.61 in interpreter fees incurred during those depositions. Ricoh first argues that only six depositions were used in connection with the successful summary judgment motion, and thus Synopsys can recover only those costs related to the six depositions. Synopsys contends that the district court properly exercised its discretion to award these costs because at the time the depositions were taken, it was reasonable to expect that they would be used for trial preparation.

Section 1920(2) permits the taxation of "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." Thus, because the award of costs for deposition transcripts is within the scope of section 1920, the district court's decision to tax the cost of all depositions, not just those used in the motion for summary judgment, is reviewed for abuse of discretion. *See Miles*, 320 F.3d at 988. Ninth Circuit precedent is clear that a document need not be offered as evidence to have been necessarily obtained for use in the case. *Haagen-Dazs*, 920 F.2d at 588; *see also Crockett v. Shields*, 8

---

These were documents produced in electronic form to Ricoh and what Synopsys chose to do and whether it wanted to make hard copies for its own convenience was its decision."). If the district court determines that Ricoh's representation is accurate, the blowback copy costs should not be allowed.

F. App'x 604, 606 (9th Cir. 2001) ("The depositions need not have been used at trial to be 'necessarily obtained for use in the case.'").  However, depositions "merely useful for discovery" are not taxable "and their expense should have been borne by the party taking them, as incidental to normal preparation for trial." *Indep. Iron Works, Inc. v. U.S. Steel Corp.*, 322 F.2d 656, 678 (9th Cir. 1963); *see also* 10 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2676 (3d ed. 1998) ("When a deposition is not actually used at trial or as evidence on some successful preliminary motion, whether its cost may be taxed generally is determined by deciding if the deposition reasonably seemed necessary at the time it was taken.").

Here, the district court taxed Ricoh for all depositions taken in the case because they "were taken in connection with several relevant aspects of the case, from validity to damage issues.  As such, at the time the depositions were taken, it was reasonable to expect that they were for the purpose of trial preparation." *Taxation Order*, slip op. at 15 (citation omitted).  This finding was within the discretion of the district court.  Because translation was necessary in connection with a number of these depositions, those costs are taxable under section 1920 as well.  *See Taniguchi v. Kan Pac. Saipan, Ltd.*, 633 F.3d 1218, 1221–22 (9th Cir. 2011).

Ricoh argues in the alternative that the taxation should be reduced by $43,217.85 because the district court taxed it for costs associated with both a written transcript and the video.  Section 1920(2) provides that costs associated with "[f]ees for printed *or* electronically recorded transcripts necessarily obtained for use in the case" are taxable. 28 U.S.C. § 1920(2) (emphasis added).  Local Rule 54-3(c)(1) further states that "[t]he cost of an original and one copy of any deposition (including videotaped deposi-

tions) taken for any purpose in connection with the case is allowable." N.D. Cal. Civ. R. 54-3(c)(1).

The district court concluded that "[a]llowing recovery for both of these fees is more in accord with the language of the Local Rules, along with commonplace practice in patent litigation of videotaping deponents." *Taxation Order*, slip op. at 10. Although the Ninth Circuit has not addressed this issue, the district court's decision that such costs are allowable comports with other circuit decisions interpreting section 1920(2). *See Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d 1471, 1478 (10th Cir. 1997) ("[T]he district court did not abuse its discretion in taxing the costs of both the preparation and transcription of the seven videotaped depositions."); *BDT Prods.*, 405 F.3d at 420. The Courts of Appeals decisions in *Tilton* and *BDT* predated the 2008 amendment to section 1920(2) that specifically provided for an award of fees "for printed or electronically recorded transcripts," Pub. L. No. 110-406, § 6, 122 Stat. 4291, 4292, but there is no indication in the text or history of that amendment that Congress intended to overrule those decisions. Consistent with the Sixth and Tenth Circuits, we think that the correct interpretation of section 1920 is that the costs constitute taxable costs.[5]

---

[5]  We note that district courts in the Northern District of California have reached divergent results interpreting Local Rule 54-3(c)(1) on whether the court can tax both the written transcript and the video of a deposition. *Compare Hynix Semiconductor v. Rambus Inc.*, 697 F. Supp. 2d 1139, 1150 (N.D. Cal. 2010) ("The cost of . . . a copy of the videotape and written transcript are taxable costs."), *with Pierson v. Ford Motor Co.*, No. C 06-6503, 2010 WL 431883, at *4 (N.D. Cal. Feb. 2, 2010) ("[T]he cost of only one method of recording the deposition is allowable."). Although "[d]istrict courts have broad discretion in interpreting and applying their local rules," *Miranda v. S. Pac. Transp. Co.*, 710 F.2d 516, 521 (9th Cir. 1983), local rules cannot render disallowable costs

Therefore, the district court did not exceed its authority under section 1920 in taxing both the written transcription and the video of the depositions.

*   *   *

We therefore affirm the award of costs related to the depositions, reverse the award of costs on the Stratify discovery database, vacate the award of copying costs, and remand for further proceedings consistent with this opinion.

**AFFIRMED-IN-PART, REVERSED-IN-PART, VACATED-IN-PART and REMANDED**

COSTS

No costs.

---

otherwise allowable under section 1920. Fed. R. Civ. P. 83(a) ("A local rule must be consistent with . . . federal statutes . . . ."); *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 139 (3d Cir. 1999) ("[T]o the extent that it conflicts with Section 1920, [the local rule] must give way."); *see also Hajek v. Burlington N. R.R. Co.*, 186 F.3d 1105, 1110 (9th Cir. 1999).